UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA (MACON)

ROMAN BOGATSCHOW,

Plaintiff,

v.

CF MEDICAL LLC and
MITCHELL D. BLUHM &
ASSOCIATES, LLC,

Defendants.

Civil Action No. 5:20-CV-00059-MTT

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, The Law Offices of Mitchell D. Bluhm & Associates, LLC ("Bluhm")[1] and

CF Medical, LLC ("CF Medical"), through undersigned counsel and pursuant to Fed. R. Civ. P.

56, respectfully submit this Memorandum of Law in support of their Motion for Summary

Judgment.  As defendants fully explain below, there is no genuine issue of material fact and

defendants are entitled to summary judgment.

## I.        INTRODUCTION

Plaintiff, Roman Bogatschow, alleges defendants violated the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and Georgia law by attempting to collect a

medical debt he incurred to an anesthesiologist, which he claims had been paid by his insurance

company.  Plaintiff is wrong, and defendants are entitled to summary judgment for at least 4

reasons:

*__First__*, there is no genuine issue of material fact.  Plaintiff's medical insurance company did

not pay the debt.  Indeed, after plaintiff received Bluhm's initial collection letter more than a year

---

[1] Erroneously identified in the complaint as Mitchell D. Bluhm & Associates, LLC.

1

before he filed this lawsuit, plaintiff's insurance company told him it did not receive a bill from, or pay, any anesthesiologist relating to his procedure, and specifically told him it did not pay Jupiter Anesthesia Associates, LLC ("Jupiter Anesthesia Associates"), the anesthesiologist to whom he incurred the subject debt.  Plaintiff told Bluhm, during a recorded conversation more than a year before he filed this lawsuit, that he had just spoken to his insurance company, and his insurance company confirmed it did not pay the debt.   There is no genuine issue of material fact. Plaintiff's insurance company did not pay the debt.  His claim defendants attempted to collect a debt his insurance company paid is false; moreover, he knew it was false long before he filed this case.

*__Second__*, plaintiff does not allege defendants communicated with him attempting to collect a debt within the FDCPA 1-year statutory period prior to filing the complaint.  Specifically, filed the lawsuit on February 17, 2020.  Any collection attempts prior to February 17, 2019 are therefore not actionable under the FDCPA.  The only communication plaintiff alleges occurred on or after February 17, 2019 was Bluhm's February 20, 2019 Verification Response Letter, which Bluhm sent plaintiff in response to plaintiff's dispute and demand for verification of the debt.  The Verification Response Letter did not demand payment or provide instructions on how to pay the debt, did not motion additional fees or adverse consequences for failure to pay, and did not otherwise mention payment was due.  Based on Eleventh Circuit law, Bluhm's February 20, 2019 Verification Response Letter is not a communication attempting to collect a debt and is not actionable under the FDCPA.  Because plaintiff does not allege defendants did not attempt to collect a debt from plaintiff within the FDCPA statutory period, plaintiff's FDCPA claims against Bluhm and CF Medical necessarily fails as a matter of law.

2

***Third***, plaintiff's claims that defendants violated the FDCPA by failing to respond to his attorney's letters are without merit because (1) Bluhm had already sent plaintiff verification of the debt prior to receiving plaintiff's counsel's letters; (2) contrary to the allegations in the complaint, the letters from plaintiff's counsel did not include documentation showing the debt was paid by insurance (and, indeed, it was not), but were merely form notices of attorney representation and demands for validation, without mention of any alleged insurance payment; and (3) neither defendant attempted to collect the debt after receiving any plaintiff's counsel's letters.

***Fourth***, plaintiff's Georgia state law claims against CF Medical, which are predicated solely on CF Medical's alleged FDCPA violations, fail because all of plaintiff's FDCPA claims against CF Medical fail.

In short, there is no genuine issue of material fact. Defendants are entitled to summary judgment in their favor and against plaintiff. The Court should grant summary judgment for defendants and against plaintiff, and award defendants their reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

## II.   FACTS

On January 4, 2016, plaintiff underwent a voluntary outpatient surgical procedure in Florida and received incurred $2,016 in anesthesiology services from Jupiter Anesthesia Associates (hereinafter, the "debt"). Plaintiff expected his insurance company to pay the debt but acknowledged he would be responsible for the debt if it was not paid by his insurance company. Following the procedure, plaintiff did not follow up with his insurance company to confirm his healthcare providers involved in the procedure were compensated, nor did he follow up with his healthcare providers to ensure that they were compensated by his insurance company.

His insurance company did not pay the Jupiter Anesthesia Associates debt.  Plaintiff did not pay the Jupiter Anesthesia Associates debt.  Jupiter Anesthesia Associates eventually sold the debt to CF Medical.

In January 2019, plaintiff received a letter from Bluhm, stating the debt had been sold to CF Medical, and seeking to collect the outstanding $2,016 balance of the account.  Upon receiving Bluhm's letter, on January 14, 2019, plaintiff contacted his insurance company, who told plaintiff it had not received a bill from any anesthesiologist relating to his January 4, 2016 procedure, and therefore it had not paid the Jupiter Anesthesia Associates debt.

After speaking to his insurance company, on January 14, 2019, plaintiff called Bluhm and told Bluhm that his insurance company told him it had not been billed for or paid the Jupiter Anesthesia Associates debt.

On February 5, 2019, the administrator for plaintiff's insurance company sent plaintiff a letter requesting additional information regarding the debt and claim, but plaintiff did not respond to his insurance company's request for information.

Instead, plaintiff he disputed the debt with Bluhm, and in response to his dispute, on February 20, 2019, Bluhm sent plaintiff a letter providing verification of the debt ("Verification Response Letter"), a redacted copy of which plaintiff attached to the complaint.  *See* ECF 1-1. Plaintiff does not allege Bluhm or CF Medical contacted him after February 20, 2019.  *See* ECF 1.

### III.   PROCEDURAL HISTORY

On February 17, 2020, plaintiff filed this lawsuit alleging Bluhm and CF Medical violated the FDCPA by attempting to collect the Jupiter Anesthesia Associates debt, which he alleges was paid by his insurance company.  ECF 1.  Specifically, plaintiff pleads that "[t]his is a case about

a consumer being hounded by collectors for a medical bill which was satisfied by his insurance company long before the collectors obtained an interest in any bill." *See* ECF 1, pg. 1. Plaintiff additionally alleges Bluhm's February 20, 2019 Verification Response Letter, responding to his dispute and providing verification of the debt, violated the FDCPA by attempting to collect a debt that his insurance company already paid. *See* ECF 1. Plaintiff also alleges defendants violated the FDCPA by ignoring letters from his counsel. *Id.* at ¶ 40. Finally, Plaintiff alleges CF Medical violated the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390, *et seq.*, and Georgia Unfair and Deceptive Practices Toward the Elderly Act ("UDPTEA"), O.C.G.A. § 10-1-853, *et seq.*, based on its alleged FDCPA violations.

Contrary to the allegations in the complaint, plaintiff's sworn testimony proves his insurance company did not pay the debt. Further, plaintiff admitted during a recorded telephone conversation with Bluhm on January 14, 2019, more than a year before he filed this lawsuit, that his insurance company told him it did not pay the debt.

During discovery, after defendants provided plaintiff's counsel proof the debt was not paid by insurance and produced the recording in which plaintiff told Bluhm, more than a year prior to filing this case, that his insurance company told him it did not pay the debt, plaintiff attempted to (informally) change his theory of liability, contending in his responses to defendant's written discovery requests that the debt was not in fact paid by his insurance company, but rather, was fraudulent (and thus refused to produce his insurance policy).

Later, during his deposition, plaintiff conceded the debt was not fraudulent, and he in fact did not actually know whether or not his insurance company had paid the debt or not. Instead, plaintiff testified that he believes he should not be responsible for the debt because he allegedly did not receive a bill from Jupiter Anesthesia Associates following the procedure (even though he

alleges he did in the complaint), and because his insurance company paid the medical center where the procedure was performed $395 for "anesthesia," despite plaintiff acknowledging that he does not know if that payment was for anesthesia (i.e., medication) or the anesthesiologist (i.e., professional services). Indeed, his testimony that he does not know whether the payment is for anesthesia or the anesthesiologist is especially hollow considering his insurance company explicitly told him that it had not received or paid a bill from any *anesthesiologist*, and specifically from Jupiter Anesthesia Associates, for the $2,016 debt Bluhm contacted plaintiff to collect.[2]

In fact, during his deposition (and despite what his insurance company told him), plaintiff now claims he does not know whether his insurance company paid the debt or not. His self-serving testimony, claiming he does not know whether the debt was paid by his insurance or not, is insufficient to raise a genuine issue of material fact about whether defendants attempted to collect a debt that was paid by his insurance.

In short, plaintiff's changing, conflicting testimony does not create a genuine issue of material fact. Plaintiff's own testimony proves his insurance company did not pay the debt. His insurance company told him it did not pay the debt. Moreover, plaintiff knew his insurance company did not pay the debt more than a year before he filed this case. He never sought to amend the complaint, and instead elected to litigated this case based on knowingly false claims and allegations. Defendants are entitled to their reasonable attorney's fees and costs under § 1692k.

---

[2] Indeed, despite plaintiff's insurance company specifically telling him it had not received or paid a bill from an anesthesiologist–a fact that should have, at the very least, put plaintiff and his attorneys on notice that a modicum of investigation would have been prudent before filing a lawsuit in federal court alleging defendants attempted to collect a debt that his insurance already paid, and then litigating the case for over a year–plaintiff testified that he could not recall if he asked for clarification from his insurance company or the hospital about the nature of the charge.

## IV.    LAW AND ARGUMENT

### A. *Standard of Review*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citing Fed. R. Civ. P. 56). The applicable standard of review on a motion for summary judgment depends on whether the mover bears the burden of persuasion at trial, and these different standards are unaffected by the filing of cross motions for summary judgment. *See Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001).

Where the plaintiff moves for summary judgment, the plaintiff must inform the court of the basis for its motion and identify those portions of the record establishing each element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the plaintiff does so, the burden then shifts to the defendant to demonstrate there is a genuine issue of material fact as to one or more of the essential elements of the plaintiff's claim(s). *Id.* However, where the defendant moves for summary judgment, the defendant need only identify the portions of the record that demonstrate the plaintiff lacks evidence to prove one or more essential elements of the plaintiff's claim(s). *Id.* If the defendant does so, the burden shifts to the plaintiff to establish, with evidence, that a genuine issue material to its claim(s) for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (citing Fed. R. Civ. P. 56).

An issue of fact is "material" if it relates to a fact the mover must establish in order to prevail on its claim or defense. *Greenberg*, 498 F.3d at 1263. A dispute is "genuine" if the mover produces evidence that would allow a reasonable factfinder to find for the mover at trial. *Id.*

However, if the evidence on which the mover relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Conclusory allegations and subjective beliefs are insufficient to create a genuine issue of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).

**B.  *Plaintiff's Insurance Company Did Not Pay the Debt***

Plaintiff's lawsuit is predicated on his false allegation Bluhm and CF Medical attempted to collect a debt that was paid by his insurance company. *See* ECF 1, pg. 1 ("This is a case about a consumer being hounded by collectors for a medical bill which was satisfied by his insurance company long before the collectors obtained an interest in any bill."); ECF 1, ¶ 38 ("On February 20, 2019 and at all times relevant to this action, Plaintiff's insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016.").

However, the evidence plaintiff's insurance company did not pay the debt, and plaintiff knew it did not pay the debt more than a year before he filed this lawsuit. Specifically, on January 14, 2019, during a recorded telephone call between plaintiff and Bluhm, plaintiff told Bluhm that he had just spoken to his insurance company, and his insurance company told him did not receive a bill from, or pay, the anesthesiologist–and specifically Jupiter Anesthesia Associates–for his procedure.

Plaintiff told Bluhm, "I was insured by [Century] Healthcare, and they received the bill from the facility account and from the doctor that performed the [procedure], but ***they never did receive the bill from the anesthesiologist***. They sent all the other bills, but I just contacted them, and I'll be glad to give you their phone number for you to contact the person I was talking to. She sent me [indiscernible] showing the Explanation of Benefits, and I'll be glad to email those to you.

They do not show a billing from the Jupiter Anesthesia Associates." *See* <u>Exhibit A</u>, pg. 50 lines 21-25; pg. 51 lines 1-8 (emphasis added).

Indeed, plaintiff repeatedly testified that his insurance company told him it did not pay the Jupiter Anesthesia Associates debt. *See, e.g.,* <u>Exhibit A</u>, pg. 56 lines 23-25; pg. 57 line 1:

> Q:    And your insurance company represented to you that it did not pay anything to Jupiter Anesthesia Associates, correct?
> A:    Correct.

In other words, plaintiff's insurance company told him in January 2019 that it did not receive or pay a bill from the anesthesiologist for his procedure. ***Plaintiff knew his insurance company did not pay the debt more than a year before he filed this case***.

There is no genuine issue of material fact. Plaintiff cannot show that defendants violated the FDCPA by attempting to collect a debt that was paid by his insurance company because plaintiff's own sworn testimony–and, indeed, his recorded telephone conversation with Bluhm, during which he recounts his contemporaneous telephone conversation with his insurance company–proves otherwise. There is no genuine issue of material fact–plaintiff's insurance company did not pay the debt. His insurance company told him it did not pay the debt. Plaintiff's allegation defendants violated the FDCPA and Georgia law by attempting to collect a debt that his insurance company paid is demonstrably false.

Because plaintiff cannot prove that defendants attempted to collect a debt that was paid by his health insurance company, defendants are entitled to summary judgment.

**C. *Plaintiff's Conflicting Testimony About Whether the Debt Was Paid by Insurance Does Not Create a Genuine Issue of Material Fact Precluding Summary Judgment***

One defendants produced evidence, including documents and recordings proving plaintiff's insurance company told him it did not pay the debt, and plaintiff relayed the same to Bluhm in a recorded telephone conversation more than a year before he filed this lawsuit, plaintiff

"changed" his theory of liability (though he never moved to amend his complaint) in a presumptive attempt to avoid dismissal of his lawsuit by attempting to create a factual issue through his own conflicting and self-serving testimony.  Specifically, in response to defendant's discovery requests, and contrary to the allegations in this complaint, plaintiff denied the debt was paid by his insurance company, instead stating the debt was fraudulent, and therefore refused to produce the insurance policy he alleged in his complaint provided coverage for debt.  *See* Exhibit E; Exhibit F.

Later, during his deposition, plaintiff again changed his testimony, this time conceding the debt is not fraudulent, but testifying he does not know if the debt was paid by his insurance or not. Specifically, plaintiff testified that the basis for this lawsuit is his confusion over whether a line item on his "Explanation of Benefits," showing a $395 payment for "anesthesia" from his insurance company to the medical center where his procedure was performed, was for the same debt as the $2,016 Jupiter Anesthesia Associates debt Bluhm later attempted to collect, *even though his insurance company specifically told him it did not pay the Jupiter Anesthesia Associates debt*.  *See, e.g.,* Exhibit A, pg. 69 lines 13-20:

> Q:    You've testified that you believe that the anesthesiologist was paid; is that correct?
> A:    I believe that there was a bill for anesthesia services paid.
> Q:    But not necessarily the anesthesiologist?
> A:    I don't know one way or the other.

Pg. 70 lines 12-21:

> Q:    Would you not want to know whether the bill that was paid was for anesthesia or anesthesiology?
> A:    I don't know what would validate was paid by insurance, except what's on the Explanation of Benefits.
> Q:    Do you think that would be prudent to know before you filed a lawsuit alleging my clients collect a debt that was paid?
> A:    It's for the court to decide.

Pg. 71 lines 12-17:

10

> Q: But you don't know if it was for anesthesia or anesthesiology, correct?
> A: Correct.
> Q: So you don't know if my clients were collecting a debt that was paid or not, correct?
> A: I do not know.

Pg. 87 lines 2-7:

> Q: Okay. Is it true, untrue or you don't know that your Explanation of Benefits indicated that you did not owe any balance for the services rendered by Jupiter Anesthesia Associates for the procedure?
> A: I don't know.

Pg. 87 lines 12-18:

> Q: As you sit here today, do you believe that as of February 20, 2019, your insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016?
> A: I do not know, to the best of my knowledge.

However, neither plaintiff's conflicting testimony, nor his intentional disregard of his insurance company's statements to him that it did not pay the debt in favor of his self-serving misreading of his Explanation of Benefits, creates a genuine issue of material fact. *See, e.g., Leary v. Livingston Cty.*, 528 F.3d 438, 444 (6th Cir. 2008) ("a claimant may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition"). This is especially true where plaintiff's own changing testimony and refusal to honestly respond to discovery prevented defendants from obtaining the information and documents necessary to defend plaintiff's claims. For example, plaintiff cannot plead in his complaint that the debt was paid by insurance, then deny the debt was paid by insurance in response to defendant's written discovery requests and refuse to produce his insurance policy, only to later testify in his deposition that his insurance may have paid the debt.

Plaintiff's conflicting, self-serving testimony does not create a genuine issue of material fact precluding summary judgment.

**D.** ***Plaintiff's FDCPA Claims Fail Because He Does Not Allege Defendants Attempted to Collect a Debt from Him Within the FDCPA One-Year Statute of Limitations***

Moreover, even if plaintiff could raise a genuine issue of material fact regarding whether his health insurance company paid the debt–which he cannot–plaintiff's FDCPA claims against defendants would still fail because he does not allege defendants attempted to collect a debt from him within 1 year of the date plaintiff filed the complaint.  Plaintiff filed this lawsuit on February 17, 2020; accordingly, any claims relating to collection attempts that occurred prior to February 17, 2019 are barred by the FDCPA's one-year statute of limitations.

Not all communications between a debt collector and a consumer are subject to the FDCPA.  A communication is an attempt to collect a debt within the purview of the FDCPA if it is made with "an animating purpose of . . . induc[ing] payment by the debtor."  *Dyer v. Select Portfolio Servicing, Inc*., 108 F. Supp. 3d 1278, 1281 (M.D. Fla. 2015) (*quoting Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).  In determining whether a communication is an attempt to collect a debt subject to the FDCPA, the court must "look to the language of the [communication] in question, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered." *Pinson v. Albertelli Law Partners LLC*, 618 Fed. Appx. 551, 553 (11th Cir. 2015).  The key question is whether the least sophisticated consumer, taking the conversation in its entirety, would believe that the debt collector was attempting to induce payment on a debt.

In *Pinson*, the Eleventh Circuit held one letter sent by the defendant debt collector was not a communication subject to the FDCPA where the letter made no reference to the amount owed or demand for payment and contained no discussion of adverse consequences or potential repercussions for failing to pay the debt.  618 F. App'x at 553.  In contrast, other letters sent by the same defendant were actionable under the FDCPA because they stated the amount owed,

12

threatened adverse consequences if the plaintiff failed to pay, and included instructions on how to tender payment.   618 Fed. App'x at 553-54.

Courts in the Eleventh Circuit, and nationwide, have confirmed that letters sent in response to a consumer's request for information, dispute, or demand for verification of the debt, which do not contain payment instructions or threaten adverse consequences in the event of nonpayment, are not communications subject to the FDCPA.  This is true even when the letter includes the balance of the debt and a disclosure that the letter is an attempt to collect a debt from a debt collector.  *See, e.g., McGee v. Piper Fin. Servs., LLC*, 2020 WL 5548779, *7 (N.D. Ga. July 7, 2020), *report and recommendation adopted*, 2020 WL 5551022 (N.D. Ga. Aug. 7, 2020) (letter sent in response to a request for verification, stating "this is an attempt to collect a debt by a debt collector and that any information obtained will be used for that purpose," was not a communication in connection with the collection of a debt); *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1242 (S.D. Fla. 2015) ("Plaintiffs argue the May 21 Letter contains an implicit demand for payment because it states the amount of the debt currently owed and includes a disclaimer it is an attempt to collect a debt. This is not enough. The December 24 letters in *Pinson* contained an implicit demand not merely because they stated an amount owed and included a boilerplate disclaimer, but rather because, in addition, they threatened adverse consequences in the event of further failure to pay and instructed how payment could be tendered. The May 21 Letter contains no description of how Plaintiffs can repay the amount owed; nor does it threaten any fees, costs, or other negative consequences if Plaintiffs fail to pay the amount owed."); *McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) (letter was not an FDCPA communication where it was sent to consumer from debt collector in response to balance inquiry and included amount due, but "did not demand payment; was

unequivocally sent in response to an inquiry or request by the debtor; was not likely part of a strategy to make payment more likely, as the Statement did not include any phone numbers, addresses, or any other information regarding how payment could be made; did not state that it was an attempt to collect a debt; and failed to threaten any consequences should the debtor fail to pay."); *see also* M*cDaniels v. Equityexperts.com, LLC*, 2020 WL 7408761, *5 (N.D. Ga. June 24, 2020) (letter from debt collector containing account number, balance, and statement that the letter is an attempt to collect a debt did not transform informational letter into communication attempting to collect a debt subject to FDCPA).

Here, the only communication from defendants that plaintiff alleges occurred on or after February 17, 2019 was Bluhm's February 20, 2019 Verification Response Letter, which Bluhm sent to plaintiff in response to plaintiff's dispute and request for verification of the debt, rather than as part of a strategy to make payment more likely. *See* ECF 1, ¶¶ 33-38; ECF 1-1. The February 20, 2019 Verification Response Letter identifies the debt by listing the name of the original creditor, account number, and balance, and then states, in pertinent part,

> We received your dispute regarding the validity of the above-referenced account(s). Enclosed is the verification of debt we objected from the current creditor, CF Medical LLC. The verification is labeled "statement of account" and sets forth the outstanding balance for services rendered by the medical provider stated above. The outstanding balance is the obligation of the responsible party of the account(s).
>
> The medical provider sold the account(s) to CF Medical LLC and removed the balance from its records. An itemization of medical services we obtained from the medical provider is also enclosed as a courtesy, which reflects a balance of $0 because the medical provider sold the account(s). The balance that was purchased by CF Medical is the obligation of the responsible party for the account(s).
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information will be used for that purpose. To ensure professional service and legal compliance, all telephone calls to and from this law firm may be monitored and/or recorded. At this time, no attorney with this Firm has personally reviewed the particular circumstances of your account.

*See* ECF 1-1.

Based on the Eleventh Circuit's ruling in *Pinson* and its progeny, Bluhm's February 20, 2019 Verification Response Letter is not a communication attempting to collect a debt and is therefore not actionable under the FDCPA.  The Verification Response Letter makes no payment demand, does not contain any instructions on how to make a payment, contains no settlement offers, does not include a payment coupon or payment envelope, makes no suggestion of any potential consequences of nonpayment, makes no mention of credit reporting, and makes no suggestion whatsoever of any consequences of nonpayment.

In short, the letter is not a communication attempting to collect a debt and therefore is not subject to the FDCPA.  It is simply an informational response to plaintiff's dispute and demand for verification of the debt.  As the Eleventh Circuit explained in *Pinson*, and the Northern District of Georgia confirmed in *McDaniels* and *McGee*, the fact that Bluhm's February 20, 2019 Verification Response Letter states the account balance and discloses that it is a collection attempt from a debt collector does not transform it into an attempt to collect a debt subject to the FDCPA.

Because defendants did not communicate with plaintiff in an attempt to collect a debt within the 1-year FDCPA statute of limitations, plaintiff's FDCPA claims must fail.

**E.  _Defendants Were Not Required to Respond to Plaintiff's Counsel's Duplicative Letters Demanding Verification of the Debt_**

Plaintiff's suggestions that defendants violated the FDCPA by ignoring his counsel's letter(s) is legally meritless and factually baseless.  Specifically, plaintiff alleges that after receiving Bluhm's February 20, 2019 Verification Response Letter, he retained counsel, and "[c]ounsel for Plaintiff sent a copy of the explanation of benefits to Defendants but received no response."  *See* ECF 1, ¶ 40.  The complaint continues, "[p]resumably, Defendants have not

15

returned the account to the alleged original creditor and have ignored communication [sic] from counsel for Plaintiff." *Id.* at ¶ 41.

In fact, Bluhm received 2 letters from plaintiff's counsel (both of whom filed the instant lawsuit on behalf of plaintiff). *See* Exhibit D. Contrary to the allegations in the complaint, neither letter contained an "explanation of benefits" or otherwise claimed the debt was allegedly paid by insurance. Rather, both letters were generic form letters providing notice of attorney representation and demanding verification of the debt (which Bluhm already sent plaintiff on February 20, 2019. Like the other allegations, the claim that plaintiff's counsel sent defendants an "explanation of benefits" is false.

Moreover, under the FDCPA, a debt collector has no obligation to respond to a notice of representation or demand for verification of the debt when the debt collector makes no further attempt to collect the debt. *See Hinkle v. Plaza Assocs.*, 2011 WL 6748610, *1 (S.D. Ga. Nov. 22, 2011), *report and recommendation adopted*, 2011 WL 6748521 (S.D. Ga. Dec. 21, 2011) (dismissing FDCPA claim for insufficient verification where the plaintiff did not allege the debt collector continued collecting after receiving written dispute; noting debt collectors may simply cease collection activities after receiving dispute).

Here, plaintiff does not allege (and, indeed, defendants did not) make any collection attempt after receiving either letter from plaintiff's counsel; accordingly, no response was required. Additionally, Bluhm already sent plaintiff verification of the debt on February 20, 2019–plaintiff attached it to the complaint. *See* ECF 1-1. Even if the FDCPA required a debt collector to respond to every demand for verification of a debt–which it does not–a debt collector has no obligation to respond to repeated, duplicative demands for verification to which it has already responded.

**F.** ***Plaintiff's GFBPA Claim, Predicated Solely on CF Medical's Alleged Violation of the FDCPA, Fail Because Plaintiff's FDCPA Claims Fail***

Finally, plaintiff's GFBPA claim against CF Medical fails for the same reasons his FDCPA claims fail.  The GFBPA provides, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."  O.C.G.A. § 10-1-393.  A violation of the GFBPA has three elements: (1) a violation of the Act, (2) causation, and (3) injury.  *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1375 (M.D. Ga. 2011).  A violation of the FDCPA may be a violation of the GFBPA.  Plaintiff predicates his GFBPA claim against CF Medical solely on the alleged FDCPA violations.

As detailed above, plaintiff's FDPCA claims fail because plaintiff's medical insurance company did not pay the debt, and further, defendants did not communicate with or attempt to collect a debt from plaintiff within the FDCPA statutory period.  Accordingly, plaintiff's GFBPA claim against CF Medical, predicated solely on CF Medical's alleged FDCPA violations, necessarily fail as well.

Similarly, plaintiff's UDPTEA claim against CF Medical fails for the same reason.  A claim under the UDPTEA is derivative and its purpose is to provide additional relief for the elderly; it does not provide a separate cause of action apart from the FBPA.  *See Sheppard v. Bank of America, N.A*., 542 Fed. App'x. 789, 793 (11th Cir. 2013) ("Without stating a claim to relief under the FBPA, Sheppard also failed to state a claim for damages or civil penalties under the UDPTEA").  *See* O.C.G.A. § 10–1–851. Here, as explained above, plaintiff's GFBPA claim against CF Medical fails as a matter of law.  Accordingly, plaintiff's UDPTEA claim, predicated on CF Medical's purported violation of the GFBPA, necessarily fails as well.

**G.** ***The Court Should Award Defendants Their Reasonable Attorneys' Fees Under § 1692k Because Plaintiff's Insurance Company Told Him it Did Not Pay The Debt More Than a Year Before Plaintiff Filed This Lawsuit***

"On a finding by the court that an action under this section was brought in bad faith and for the purposes of harassment, the court may award to the defendant attorneys' fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3); *see also Rhinehart v. CBE Group, Inc.*, 714 F. Supp. 2d 1183 (M.D. Fla. 2010) (debtor and her attorney unreasonably and vexatiously multiplied proceedings, and exhibited deliberate indifference to obvious facts in FDCPA case against debt collector, thereby entitling collector to award of attorney fees as a sanction, where the majority of the claims were unsupported, the verified complaint contained spurious claims and erroneous assertions of fact, and debtor's counsel failed to dismiss any of claims when it became clear that they had no factual basis whatsoever, forcing debt collector to file summary judgment motion); *Black v. Equinox Financial Management Solutions, Inc.*, 444 F. Supp. 2d 1271 (N.D. Ga. 2006) (awarding attorney's fees and costs to the defendant under § 1692k(a)(3) where the plaintiff's claim "was based on little more than a hunch" and was pressed "through summary judgment" based on a "bad faith effort to run up attorneys' fees and costs in hopes of a last minute settlement or [ ] a similarly bad faith gamble that the claim might proceed to trial despite its lack of merit"); *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (granting defense fees under § 1692k where plaintiff's deposition testimony contradicted most of the factual allegations in his complaint).

Here, plaintiff's testimony, and the recorded telephone conversation on January 14, 2019, proves plaintiff knew that his insurance company did not pay the debt more than a year before he filed this case.

Simply, plaintiff's bad faith is evidenced by filing a lawsuit that alleges defendants

attempted to collect a debt his insurance company paid, after his insurance company told him it did not pay the debt.  Such a lawsuit could have no other purpose than to harass defendants.

Moreover, plaintiff's testimony that he did not think it was necessary to engage in even a modicum of investigation to determine whether the "anesthesia" charge paid by his insurance company was for anesthesia or the anesthesiologist before filing and litigating a lawsuit in federal court for over a year, and causing defendants to expend a substantial amount of time and resources, *after his insurance company told him it did not receive or pay a bill for any anesthesiologist*, underscores that this action was brought and maintained for no reason other purpose than to harass defendants, and further evidences his disregard for the Court's time and resources.[3]  Neither the Federal Rules, nor the FDCPA, condone such conduct.

Given the entire lack of merit to the claims, and his refusal to dismiss this action, requiring defendants to expend unnecessary fees litigating this case through discovery and summary judgment motion practice, the Court should award defendants their reasonable defense fees and costs pursuant to 15 U.S.C. § 1692(k).

---

[3] *See* <u>Exhibit A</u>, pg. 69 line 21-25; 70 lines 1-21 (emphasis added):

Q: Did you call Jupiter Medical Center to clarify whether that was the anesthesiologist or just for any anesthesia at any point?
A: **I don't recall at this time**.
. . . .
Q: Do you remember calling Jupiter Anesthesia Associates?
A: I don't remember.
Q: Wouldn't that be an important thing to do after you got a bill from Jupiter Anesthesia Associates for $2,000?
A: **It's your opinion**.
. . . .
Q: **Do you think that would be prudent to know before you filed a lawsuit alleging my clients collected a debt that was paid?**
A: **It's for the court to decide**.

## V.   CONCLUSION

There is no genuine issue of material fact.  Plaintiff's sworn testimony proves that his medical insurance company told him that it did not receive a bill for, or pay, the debt, and that plaintiff knew that it had not paid the debt when plaintiff filed this lawsuit.  However, plaintiff nevertheless filed, and has continued to pursue, the instant lawsuit, wasting defendants, and now the Court's, time and resources litigating a case predicated on claims and allegations he knows are false.

Date:  April 7, 2021                                   Respectfully submitted,

*/s/  Kirsten H. Smith*
Kirsten H. Smith (#702220)
SESSIONS, ISRAEL & SHARLE
3850 N. Causeway Blvd., Suite 200
Metairie, LA 70002
Telephone: (504) 846-7943
Email: ksmith@sessions.legal
*Attorney for Defendants,*
*The Law Offices of Mitchell D. Bluhm &*
*Associates, LLC and CF Medical LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2021, a copy of the foregoing was electronically filed with the Clerk of the Court and served via CM/ECF upon all counsel of record.

*/s/  Kirsten H. Smith*
Kirsten H. Smith