UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA (MACON)

ROMAN BOGATSCHOW,

Plaintiff,

v.

CF MEDICAL LLC and
MITCHELL D. BLUHM &
ASSOCIATES, LLC,

Defendants.

Civil Action No. 5:20-CV-00059-MTT

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN <u>SUPPORT</u> <u>OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, The Law Offices of Mitchell D. Bluhm & Associates, LLC ("Bluhm")[1] and

CF Medical, LLC ("CF Medical"), through undersigned counsel and pursuant to Fed. R. Civ. P.

56 and the Local Rules, respectfully submit this statement of undisputed material facts in support

of their Motion for Summary Judgment as follows:

1.      On January 4, 2016, plaintiff underwent a voluntary outpatient surgical procedure

in Florida and received services from an anesthesiologist provided by from Jupiter Anesthesia

Associates, LLC ("Jupiter Anesthesia Associates"), incurring a debt of $2,016 (hereinafter, the

"debt").  *See* **ECF 1,** *Complaint***, ¶ 22; <u>Exhibit A</u>,** *Deposition of Plaintiff***, pg. 55 lines 1-3; pg.**

**56 lines 6-10.**

2.      Plaintiff expected his insurance company to pay for the anesthesiologist's services

provided by Jupiter Anesthesia Associates.  **<u>Exhibit A</u>, pg. 55 lines 7-9[2]; pg. 63 lines 7-11.**[3]

---

[1] Erroneously identified in the complaint as Mitchell D. Bluhm & Associates, LLC.

[2] <u>Exhibit A</u>, lines 7-9:

    Q:      Did you expect your insurance to pay for that anesthesia?

    A:      Yes.

[3] <u>Exhibit A</u>, lines 7-11:

    Q:      Did you expect the anesthesiologist associated with the procedure to bill  your
            insurance company?

1

3.    Plaintiff testified expected that if his insurance company denied coverage for the anesthesiologist's services, he would be responsible for paying for those services.  **Exhibit A, pg. 55 lines 14-18.**[4]

4.    Plaintiff's insurance company told him it did ***not*** pay the Jupiter Anesthesia Associates debt.  **Exhibit A, pg. 43 lines 19-23; pg. 44 lines 13-16; pg. 50 lines 21-25; pg. 51 lines 1-8; pg. 56 lines 23-25; pg. 57 lines 1-7; pg. 78 lines 4-21.**

5.    Plaintiff has no reason to believe that his insurance company would lie to him. **Exhibit A, pg. 53 lines 1-11.**

6.    In the year following the procedure, plaintiff did not follow up with his insurance company to ensure his healthcare providers that provided him services during the procedure were compensated by his insurance company.  **Exhibit A, pg. 67 lines 23-25; pg. 68 lines 15-25.**

7.    In the year following the procedure, plaintiff did not follow up with any of his healthcare providers to ensure that they were compensated by his insurance company.  **Exhibit A, pg. 67 lines 23-25; pg. 68 lines 1-6.**

8.    Plaintiff did not pay the Jupiter Anesthesia Associates debt.  **Exhibit A, pg. 56 lines 20-22.**

9.    On January 4, 2019, Bluhm sent plaintiff a letter notifying him that Jupiter Anesthesia Associates had sold the outstanding debt relating to the January 4, 2016 procedure to CF Medical, and CF Medical had placed the debt with Bluhm for collection.  **ECF 1, ¶ 31.**

---

A:    I expected there to be some sort of billing, yes.

[4] Exhibit A, pg. 55 lines 14-18:

Q:    Did you expect that if your insurance denied coverage for the services of the anesthesiologist that provided the anesthesia that you would be    responsible    for it?

A:    Yes.

10.    On January 14, 2019, after plaintiff received Bluhm's January 4, 2019 letter regarding the Jupiter Anesthesia Associates debt, plaintiff called his insurance company to ask if his insurance company paid the debt.  **Exhibit A, pg. 43 lines 13-25; pg. 44 lines 1-16.**

11.    During the January 14, 2019 telephone conversation with his insurance company, plaintiff's insurance company told plaintiff it never received a bill from or paid an anesthesiologist relating to his January 4, 2016 procedure.  **Exhibit A, pg. 43 lines 19-23; pg. 44 lines 13-16; pg. 50 lines 21-25; pg. 51 lines 1-8; pg. 56 lines 23-25; pg. 57 lines 1-7.**

12.    During the January 14, 2019 telephone call between plaintiff and his insurance company, plaintiff's insurance company specifically told plaintiff that it did not pay the Jupiter Anesthesia Associates debt.  **Exhibit A, pg. 43 lines 19-23; pg. 44 lines 13-16; pg. 50 lines 21-25; pg. 51 lines 1-8; pg. 56 lines 23-25; pg. 57 lines 1-7**.

13.    After speaking to his health insurance company, on January 14, 2019, plaintiff called Bluhm and told Bluhm during a recorded telephone conversation that he had just spoken to his insurance company, and his insurance company said it had not received a bill from or paid the anesthesiologist, and specifically Jupiter Anesthesia Associates, relating to the January 4, 2016 procedure. **Exhibit A, pg. 50 lines 21-25; pg. 51 lines 1-8.**

14.    Specifically, on January 14, 2019, plaintiff told Bluhm, "I was insured by Sentry[5] Healthcare, and they received the bill from the facility account and from the doctor that performed the [procedure], but **they never did receive the bill from the anesthesiologist**. They sent all the other bills, but I just contacted them, and I'll be glad to give you their phone number for you to contact the person I was talking to.  She sent me [indiscernible] showing the Explanation of

---

[5] Scrivener's error; the correct name of plaintiff's health insurance company is Century Healthcare.

3

Benefits, and I'll be glad to email those to you.  **They do not show a billing from the Jupiter Anesthesia Associates**." **Exhibit A, pg. 50 lines 21-25; pg. 51 lines 1-8 (emphasis added).**

15.      On February 5, 2019, plaintiff's insurance company sent plaintiff a letter asking him for additional information regarding any claim relating to the unpaid Jupiter Anesthesia Associates debt and the January 4, 2016 procedure. **Exhibit B,** *Feb. 5, 2019 Letter from WebTPA to Plaintiff*; **Exhibit A, pg. 79 lines 21-25; pg. 80 lines 1-25; pg. 81 lines 1-25; pg. 82 lines 1-9.**

16.      Plaintiff testified he cannot recall if he responded to his insurance company's February 5, 2019 letter.  **Exhibit A, pg. 81 lines 6-25; pg. 82 lines 1-9.**

17.      Instead, plaintiff disputed and requested validation of the debt from Bluhm.  **ECF 1, ¶ 33.**

18.      On February 20, 2019, Bluhm sent plaintiff a letter responding to his dispute and demand for verification of the debt. *See* **ECF 1-1 ("Verification Response Letter"), ECF 1, ¶¶ 34-36.**

19.      The February 20, 2019 Verification Response Letter lists the original creditor, account number, and balance of the debt, and then states, in pertinent part,

> We received your dispute regarding the validity of the above-referenced account(s). Enclosed is the verification of debt we objected from the current creditor, CF Medical LLC.  The verification is labeled "statement of account" and sets forth the outstanding balance for services rendered by the medical provider stated above. The outstanding balance is the obligation of the responsible party of the account(s).
>
> The medical provider sold the account(s) to CF Medical LLC and removed the balance from its records.  An itemization of medical services we obtained from the medical provider is also enclosed as a courtesy, which reflects a balance of $0 because the medical provider sold the account(s).  The balance that was purchased by CF Medical is the obligation of the responsible party for the account(s).
>
> This communication is from a debt collector.  This is an attempt to collect a debt and any information will be used for that purpose.  To ensure professional service and legal compliance, all telephone calls to and from this law firm may be

monitored and/or recorded.  At this time, no attorney with this Firm has personally reviewed the particular circumstances of your account.

*See* **ECF 1-1.**

20.     Plaintiff does not allege Bluhm or CF Medical contacted him after February 20, 2019.  **ECF 1, ¶¶ 34-36.**

21.     On February 17, 2020, plaintiff filed this lawsuit alleging Bluhm and CF Medical violated the FDCPA by attempting to collect the Jupiter Anesthesia Associates debt after his insurance company paid the debt in 2016, despite his insurance company telling him it did not pay the Jupiter Anesthesia Associates debt.  **ECF 1; <u>Exhibit A</u>, pg. 43 lines 19-23; pg. 44 lines 13-16; pg. 50 lines 21-25; pg. 51 lines 1-8; pg. 56 lines 23-25; pg. 57 lines 1-7.**

22.     Specifically, plaintiff alleges Bluhm's Verification Response Letter, responding to his dispute and providing verification of the debt, violated the FDCPA by attempting to collect a debt that his insurance company already paid.  **ECF 1, ¶ 38.**

23.     Plaintiff additionally alleges defendants violated the FDCPA by ignoring letter(s) his counsel sent Bluhm that allegedly contained a copy of plaintiff's Explanation of Benefits, which plaintiff claims proves that his insurance company paid the debt.[6]  **ECF 1, ¶ 40.**

24.     Plaintiff also alleges CF Medical violated the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq*., based on its purported FDCPA violations.  **ECF 1, ¶ 50.**

---

[6] Indeed, even the complaint's description of plaintiff's counsel's own letter(s) to Bluhm are blatantly inaccurate.  Contrary to the allegations in the complaint stating plaintiff's counsel's letter(s) to Bluhm included a copy of the Explanation of Benefits (purporting to show the debt was paid by insurance), the letters are simply form notices of attorney representation and requests for verification of the debt, neither of which included or referenced the Explanation of Benefits or stated the debt was allegedly paid by insurance.  **<u>Exhibit D</u>, *Plaintiff's Counsel's Letters to Bluhm*.**

25.     On December 8, 2020, plaintiff served his responses to defendants' Interrogatories, contending that the debt was not paid by his insurance company.  **Exhibit A, pg. 40 lines 6-25; pg. 41 lines 1-13; Exhibit E,** *(Redacted) Responses to Interrogatories***.**

26.  On December 7, 2020, plaintiff served his responses to defendants' Requests for Admissions, contending that the debt was not paid by his insurance company, but was fraudulent. **Exhibit A, pg. 53 line 15; Exhibit F,** *Responses to Requests for Admissions***.**

27.     However, during his deposition, plaintiff testified that he does not believe the Jupiter Anesthesia Associates debt is fraudulent.  **Exhibit A, pg. 38 lines 21-25; pg. 39 line 1**[7]**; pg. 42 lines 5-7; pg. 87 lines 2-7 and 12-18.**

28.     During his deposition, plaintiff further testified that, despite his insurance company specifically telling him it did not receive or pay any bill from an anesthesiologist, he does not know if his insurance company paid the Jupiter Anesthesia Associates debt or not.  **Exhibit A, pg. 69 lines 13-20**[8]**; 70 lines 12-21; pg. 71 lines 12-17**[9]**; pg. 87 lines 2-7 and 12-18.**

29.     Plaintiff testified he does not believe he should be responsible for the debt because he claims he did not receive a bill from Jupiter Anesthesia Associates after the procedure, even

---

[7] Exhibit A, pg. 38 lines 21-25; pg. 39 line 1:
Q:     You do not believe that this debt was never owed, correct?
A:     Correct.
Q:     You do not believe that this debt is fraudulent, correct?
A:     Correct.

[8] Exhibit A, pg. 69 lines 13-20:
Q:     You've testified that you believe that the anesthesiologist was paid; is that correct?
A:     I believe there was a bill for anesthesia services paid.
Q:     But not necessarily the anesthesiologist?
A:     I don't know one way or the other.

[9] Exhibit A, pg. 71 lines 12-17:
Q:     But you don't know if it was for anesthesia or anesthesiology, correct?
A:     Correct.
Q:     So you don't know if my clients were collecting a debt that was paid or   not, correct?
A:     I do not.

though he specifically alleged he did in the complaint, which he never sought to amend.  **ECF 1, ¶ 23; <u>Exhibit A</u>, pg. 39 lines 2-5; 75 lines 1-15.**

30.     Plaintiff additionally testified the basis for his confusion about whether his insurance company paid the debt is due to a line item on a document called an "Explanation of Benefits" provided to him by his insurance company, showing his insurance company paid Jupiter Medical Center, the hospital where the procedure was performed, $395 for "anesthesia."  **<u>Exhibit C</u>, *Explanation of Benefits*; <u>Exhibit A</u>, pg. 58 lines 22-24.**

31.     The "Explanation of Benefits" does not mention "Jupiter Anesthesia Associates," "anesthesiology services," the "anesthesiologist" that performed the procedure, or reference Jupiter Anesthesia Associates or the $2,016 Jupiter Anesthesia Associates debt at issue in this case. **<u>Exhibit C</u>; <u>Exhibit A</u>, pg. 58 lines 13-25; pg. 59 lines 1-12.**

32.     Plaintiff testified he does not know if the payment for "anesthesia" listed on the "Explanation of Benefits" is for anesthesia (i.e., medication) or the anesthesiologist (i.e., professional services), despite his insurance company specifically telling him during his January 14, 2019 telephone conversation that it had not received a bill from any anesthesiologist relating to his January 4, 2016 procedure.  **<u>Exhibit A</u>, pg. 69 lines 13-20; 70 lines 12-21; 71 lines 12-17.**

33.     Plaintiff testified he cannot remember if, prior to filing this lawsuit, he contacted Jupiter Medical Center to ask whether the "anesthesia" charge paid to it by his insurance company was for anesthesia or the anesthesiologist.  **<u>Exhibit A</u>, pg. 69 lines 21-24.**

34.     Plaintiff testified he cannot remember if, prior to filing this lawsuit, he asked his insurance company to clarify whether the "anesthesia" charge it paid to Jupiter Medical Center was for anesthesia or the anesthesiologist.  **<u>Exhibit A</u>, pg. 69 line 25; pg. 70 lines 1-4.**

35.     Plaintiff admitted during his deposition he does not know whether his insurance company paid the Jupiter Anesthesia Associates debt.  **Exhibit A, pg. 87 lines 2-7 and 12-18.**

36.     Plaintiff admitted during his deposition he does not know whether or not defendants attempted to collect a debt that was paid by his insurance company.  **Exhibit A, pg. 87 lines 2-7 and 12-18.**

Date:  April 7, 2021                              Respectfully submitted,

                                                  */s/ Kirsten H. Smith*
                                                  Kirsten H. Smith (#702220)
                                                  SESSIONS, ISRAEL & SHARLE
                                                  3850 N. Causeway Blvd., Suite 200
                                                  Metairie, LA 70002
                                                  Telephone: (504) 846-7943
                                                  Email: ksmith@sessions.legal
                                                  *Attorney for Defendants,*
                                                  *The Law Offices of Mitchell D. Bluhm &*
                                                  *Associates, LLC and CF Medical LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2021, a copy of the foregoing was electronically filed with the Clerk of the Court and served via CM/ECF upon all counsel of record.

                                                  */s/ Kirsten H. Smith*
                                                  Kirsten H. Smith