# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA (MACON)

ROMAN BOGATSCHOW,

       Plaintiff,

vs

CF MEDICAL LLC; and
MITCHELL D. BLUHM
& ASSOCIATES, LLC,

       Defendants.

**CERTIFIED TRANSCRIPT**

CASE NO.:
5:20-cv-00059-MTT

DEPOSITION OF ROMAN BOGATSCHOW

APPEARING REMOTELY

VOLUME I

MARCH 5, 2021

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

Page 2

REMOTE APPEARANCES:

FOR THE PLAINTIFF:
    JOHN NELSON
    The Nelson Law Chambers LLC
    Suite 100
    2180 Satellite Boulevard
    Duluth, GA 30097
    (404) 348-4462
    john@nelsonchambers.com.com

FOR THE DEFENDANTS:
    KIRSTEN H. SMITH
    Sessions, Israel & Shartle
    Suite 200
    3850 N. Causeway Boulevard
    Metairie, LA 70002
    (504) 846-7943
    ksmith@sessions.legal

Page 3

                    I N D E X

THE WITNESS:  ROMAN BOGATSCHOW  - VOLUME I

EXAMINATION:                            PAGE
BY MS. SMITH.......................    5
BY MR. NELSON......................   90

                    EXHIBITS:
EXHIBIT 1    Complaint                     30
EXHIBIT 2    Defendants' Discovery         39
             Requests to Plaintiff

EXHIBIT 3    (Skipped)

EXHIBIT 4    Plaintiff's Response to       53
             Defendant First Request
             for Admissions

EXHIBIT 5    Explanation of Benefits       58

EXHIBIT 6    Letter dated 2/20/2019        59

EXHIBIT 7    WebTPA                        79

Page 4

        The videoconference deposition of
ROMAN BOGATSCHOW was reported remotely on March 5,
2021, beginning at 10:00 a.m. before Lori Roy, a
Registered Professional Reporter and Certified
Court Reporter.



                    - - - -

Page 5

            ROMAN BOGATSCHOW,
called as a witness and having been first duly
sworn, testified as follows:

                EXAMINATION
BY MS. SMITH:
    Q.    Mr. Bogatschow, is that how you
pronounce your last name?  I want to make sure
I'm getting it right.
    A.    Yes, Bogatschow.
    Q.    Bogatschow.  Okay.
          My name is Kirsten Smith.  I
represent the defendants in this case.  I'm just
going to be asking you some questions, but
before I do, I just want to go over some ground
rules.
          First, can you hear me?
    A.    Yes.
    Q.    Okay.  If at any time I'm speaking
too fast or I'm unclear or you don't understand
a question that I'm asking, just let me know.
I'm happy to rephrase or repeat myself.  I know
that this is a deposition remotely.
          So if you are having any technical
issues, please speak up.  If at any time your



(866) 715-7770
advancedONE.com

Page 26

collecting on, did any debt collector contact you about this account before my clients?

A.    No.

Q.    Now, the medical insurance policy you had in Jupiter, Florida, through your employer, (indiscernible)?

A.    Say that again, please.

Q.    I'm sorry.

The medical insurance policy in effect while you were working in Jupiter, Florida, the one you had at the time of the procedure, did you ever read that policy?

A.    Yes.

Q.    And you said that they approved the procedure prior to you having a procedure, correct?

A.    Yes.

Q.    Did they approve the provider prior to you having that procedure?

A.    I don't recall what the procedures were.

Q.    Do you remember if you had to go to an in-network doctor?

A.    Yes.

Q.    Do you remember if you had to get

Page 27

more than one doctor approved?

A.    I don't remember.

Q.    Let's transition to the actual procedure itself.

You've said you remember signing some paperwork?

A.    The usual.

Q.    What do you mean by "the usual"?

A.    They typically have you sign paperwork to say that there are some risks, that, you know, you're accepting all of the risks.

Q.    Do you remember signing any financial documents?

A.    I don't remember.

Q.    Did anybody go with you when you had the procedure?

A.    My wife.

Q.    Anybody else?

A.    No.

Q.    Did anybody from the insurance company go with you?

A.    No.

Q.    Did anybody from the insurance company, your medical insurance company, agree

Page 28

to pay if you didn't pay?

A.    I have no understanding of that.  I mean, I've never heard of that before.

Q.    Do you remember meeting with an anesthesiologist?

A.    No, I don't.

Q.    Is that because you didn't meet with an anesthesiologist or because you don't remember?

A.    I don't remember.

Q.    So you might have?  You just don't remember?

A.    Possible.

Q.    Were you happy with your doctor?

A.    Yes.

Q.    Would you recommend him to other people?

A.    Yes.

Q.    Were you happy with the medical center?

A.    Yes.

Q.    After the procedure, did you receive any bills?

A.    I don't recall.

Q.    What about correspondence from your

Page 29

doctor?

A.    That, again, I don't recall.

Q.    Did you receive any discharge paperwork?

A.    Yes.

Q.    Did it tell you standard medical information?

A.    It did, and things to watch out for in recovery.

Q.    Did you keep that?

A.    No.

Q.    Did you receive any paperwork from your insurance company at any point?

A.    Maybe.

Q.    Did you keep that?

A.    I don't know.  I would have to look and see.

Q.    Do you believe you might have it today?

A.    Possibly.

Q.    Since filing this lawsuit, have you looked for that?

A.    No, not since the lawsuit.

Q.    Since being contacted by my client, have you looked for it?

AdvancedONE LEGAL    (866) 715-7770    advancedONE.com

Page 30

A.   No.

MS. SMITH:  Now, I'm going to show you a document.  Hold on A second.  I'm going to mark this as Exhibit 1.

(Exhibit 1 was marked for identification.)

BY MS. SMITH:

Q.   Now, this is the Complaint that is filed in this case.

Have you ever seen this document before?

A.   Yes.

Q.   Did you see this before it was filed or a version of this?

A.   Yes.

Q.   Did you read it before it was filed?

A.   Yes.

Q.   Do you believe the allegations or the -- strike that.

Setting aside the kind of legal jargon in this document, do you believe the statements in this to be true, or do you believe the statements in this to be true before it was filed?

A.   Yes.

Page 31

Q.   What about now?

A.   Yes, still.

Q.   I'm going to go down to Paragraph 22.

Let's see, 22 it says on January 4, 2016, you underwent a medical procedure and received anesthesia from Jupiter Anesthesia Associates.

Now, you believe that to be true, correct?

A.   I don't know who was the agency. But, yes, I did receive anesthesia.

Q.   To the best of your knowledge, you believe that to be true?

MR. NELSON:  I'm going to object on the basis of asked and answered.

You may go ahead and respond, Mr. Bogatschow.

THE WITNESS:  If that is name of the company, that that's who provided it, I suppose.

BY MS. SMITH:

Q.   And in Paragraph 23, it says you were billed for the service by Jupiter Anesthesia Associates which forms the basis of the debt defendants later attempted to collect.

Page 32

Did I read that correctly?

A.   You read it correctly.

Q.   And you testified that you read this Complaint prior to it being filed, correct?

A.   Yes.

Q.   And you believed it to be true prior to this being filed, correct?

A.   I did not receive any bill from Jupiter Anesthesia Associates.

Q.   But you just testified that you read this Complaint and you believed it to be true prior to this being filed, did you not?

Did I misstate your testimony?  This is your Complaint.  I just want to make sure that I understand.

MR. NELSON:  I'm going to object on the grounds of asked and answered.

You can go ahead and respond, Mr. Bogatschow, but I will object and say that he's answered your question.  You may not like his response, but he has answered your question.

THE WITNESS:  I was billed by Mitchell Bluhm on January 19th.

Page 33

BY MS. SMITH:

Q.   Okay.  But we're talking about in 2016.  We're just going through your Complaint in your lawsuit.

MR. NELSON:  I'm going to object on the grounds of asked and answered, and I'm going to object as to form.  You're misstating the contents of the document.  It mentions nothing in Paragraph 23 of the Complaint about 2016.

MS. SMITH:  It actually does.

BY MS. SMITH:

Q.   So ON January 4, 2016 --

MR. NELSON:  In Paragraph 23 it does not mention anything about 2016.

MS. SMITH:  It says you were -- 23, let me reread this.  You were billed for this service by Jupiter Anesthesia Associates which forms the basis of the debt defendants later attempted to collect.

Again, did I misread that?

A.   Not misread it.

Q.   Were you billed for this service by Jupiter Anesthesia Associates?

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 34

MR. NELSON: I'm going to object. This question was asked. Mr. Bogatschow previously answered.

Mr. Bogatschow, you may respond; however, I will object on this continuing questioning. Just because he answered in a way you do not like does not mean that you can badger my client.

THE WITNESS: I did not receive a bill from Jupiter Anesthesia Associates.

BY MS. SMITH:

Q. Okay. So this allegation in your complaint is untrue, correct?

A. Correct.

Q. So you were not billed for the service by Jupiter Anesthesia Associates?

A. Right.

Q. So to the best of your knowledge, this allegation in your Complaint is untrue?

A. Best of my knowledge.

Q. Do you know why your Complaint said this when -- strike that.

Without revealing any communications between you and your attorney, do you know why

Page 35

this allegation was in your Complaint when it's untrue.

MR. NELSON: I'm going to object on the grounds that this question inherently calls for the disclosure of confidential attorney/client communications. This is an objection as to form.

I'm going to direct my client to not answer this question as phrased, and I will also object on the grounds that the fundamental core of this question was previously asked, and he has previously answered and clarified what bill he received, which was from your client, Mitchell Bluhm & Associates.

And I'm going to once again direct my client not to answer the question as asked. If you would like to rephrase your question, you may.

BY MS. SMITH:

Q. Mr. Bogatschow, are you going to take your counsel's advice and not answer my question?

A. I will not answer.

Q. Okay. So to clarify, allegation No.

Page 36

23 as alleged is untrue.

That is your position, correct?

MR. NELSON: I'm going to object on the grounds of asked and answered.

You may go ahead and respond, Mr. Bogatschow.

THE WITNESS: Correct.

BY MS. SMITH:

Q. So I'm going to make a list of the allegations that are untrue in your Complaint to make sure that I understand.

How about No. 1, do you -- I'm sorry. No. 22, do you maintain that No. 22 is true that you underwent a medical procedure on January 4, 2016 and received anesthesia from Jupiter Anesthesia Associates?

MR. NELSON: I'm going to object on the grounds that that was asked answered.

You may go ahead and respond, Mr. Bogatschow.

THE WITNESS: I received anesthesia at that time.

BY MS. SMITH:

Q. Okay. I'm going to go down to 38.

Page 37

It says on February 20, 2019, at all times relevant to this action, plaintiff's insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016.

Did I read that correctly?

A. Yes, you read it correctly.

Q. Do you believe that on February 20, 2019 -- strike that.

At the time this Complaint was filed, did you believe on February 20, 2019, that your insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016?

A. Yes.

Q. Do you believe that to be the case today?

A. Yes.

Q. So you -- just to clarify, because this is important, you believe that your insurance company has paid Jupiter Anesthesia Associates?

A. I believe they paid what they believed was correct.

Q. That wasn't my question, sir.

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

Page 38

Do you believe that your insurance company has fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016?

A.    Yes.

Q.    You believe that to be the case today?

MR. NELSON:  I'm going to object on the grounds of asked and answered.

BY MS. SMITH:

Q.    You can answer the question.

A.    Yes.

Q.    So to clarify, you received anesthesia from Jupiter Anesthesia Associates, correct, or from someone, correct?

A.    From someone, true.

Q.    And you believe your insurance company compensated Jupiter Anesthesia Associates for those services, correct?

A.    Yes.

Q.    You do not believe that this debt was never owed, correct?

A.    Correct.

Q.    You do not believe this debt is fraudulent, correct?

Page 39

A.    Correct.

Q.    You just don't believe you ever received a bill for it, correct?

A.    I believe the bill was never sent out.

Q.    I understand.  Okay.

Okay.  Now I think I'm clear on the Complaint and on what your position is.  That's very helpful.

MS. SMITH:  I am going to flip to as Exhibit 2 defendants' discovery requests to plaintiff.

(Exhibit 2 was marked for identification.)

BY MS. SMITH:

Q.    We are just going to go down to Page 4.

MR. NELSON:  What exhibit is this?

MS. SMITH:  It's going to be 2, defendants' discovery requests to plaintiff.

BY MS. SMITH:

Q.    We're just going to down to Page 4, and we're going to look at the definitions.

Page 40

And in the middle of the page it says, Account -- and these are just definitions it says, Account, debt, subject debt or obligation means the Jupiter Anesthesia Associates account referenced in your Complaint.

And so we served -- my client served discovery requests on you, Mr. Bogatschow, asking you certain questions, and some of the questions asked about the account or the debt or the subject debt, and when we said subject debt or account, we meant the Jupiter Anesthesia Associates account referenced in your Complaint.

Do you understand?

A.    I understand.

Q.    Okay.  And I'm going to show you now your responses to some of these discovery requests, specifically your response to Interrogatory 18.

Now, I'm going read to you this interrogatory.  An interrogatory is just a question.  It's kind of legal jargon.

But it says -- it asks you to identify the name, date, policy number and contact information for your health insurance carrier or provider that you claim paid the

Page 41

subject debt at issue in this case.

So, again, subject debt means the Jupiter Anesthesia Associates' account referenced in your Complaint.

And you responded, plaintiff, you, does not claim that insurance paid the subject debt.

Can you explain that?

A.    I contacted the insurance company.  I gave a copy of the Explanation of Benefits that showed that there was a payment made to anesthesia, who all was approved for that payment.

Q.    And this is -- and I'm so sorry, but this is very important because this is the crux of this case.

In your Complaint, you allege that my clients violated the law by collecting a debt that was paid by your insurance.

In this interrogatory response, you claim that insurance did not pay the debt.  I want to know whether or not you believe that your insurance paid the debt.

MR. NELSON:  I'm going to object on the grounds that he was asked that

Page 42

question by you previously, and he has answered it.

You may go ahead and respond to the best of your ability, Mr. Bogatschow.

THE WITNESS:  To the best of my ability, the insurance company paid some sort of anesthesia debt.

BY MS. SMITH:

Q.    So is the answer you don't know?

MR. NELSON:  I'm going to object on the grounds of asked and answered.

You may go ahead and respond, Mr. Bogatschow.

THE WITNESS:  I already said that.

BY MS. SMITH:

Q.    I'm going to play a few recordings, if I can get them to work.

MR. NELSON:  Hopefully, you have better success at it than I did.

Now, are these going to be provided as exhibits?

MS. SMITH:  No.  We're going to go off the record, if I can get them to work.  Hold on.  I'm sorry.  Bear with me

Page 43

one second.  Let's take a five-minute break.

(Brief break.)

BY MS. SMITH:

Q.    I am going to play for you a recording of a conversation between -- the call between you and my client.  Let me know if you can hear this.

(Recording played)

BY MS. SMITH:

Q.    Mr. Bogatschow, you could hear that recording, correct?

A.    Yes, I heard it.

Q.    And in that recording -- prior to that recording, you had spoken to your prior health insurance company, correct?

A.    Yes, ma'am.

Q.    And that would be Sentry Healthcare?

A.    Yes.

Q.    And when you spoke to Sentry Healthcare, they told you that they never received a bill from the anesthesiologist, correct?

A.    Yes.

Q.    And that's what you relayed to my client, Bluhm, correct?

Page 44

A.    Yes.

Q.    And you actually told Bluhm to speak with Sentry Healthcare, correct?

A.    Yes.

Q.    And you had -- and after this call, you had Sentry Healthcare call Bluhm, correct?

A.    Yes.

Q.    And so at the time this call -- this discussion, this call, you believed that the anesthesiologist had not been paid, correct?

A.    I believed that they had not sent me a bill out.

Q.    At the time of this conversation, you believed that no anesthesiologist had billed your health insurance, correct?

A.    Correct.

Q.    So at the time of this conversation, you believed that no -- your insurance company had not paid any anesthesiologist relating to your procedure, correct?

A.    I believe that insurance paid what they felt they were supposed to pay.

Q.    Then why would you have your insurance company call Bluhm after this telephone conversation?

Page 45

A.    Frequently providers will send out bills that perhaps they had the wrong coding or something on and the insurance company will pay one amount, but it's not what they want, and they have to send additional information.

Q.    But then why did you say that no -- they hadn't received a bill from any anesthesiologist?

A.    Because I did not recognize the name of that company.  I didn't receive a bill from them.

Q.    But they hadn't received a bill from any anesthesiologist, correct?

MR. NELSON:  I'm going to object as to form based upon Mr. Bogatschow not having personal knowledge as to what the -- actual knowledge as to what the insurance did or did not receive.  He can, I think, discuss what his understanding was but not speak as to whether it was actually received or not.

MS. SMITH:  Fair enough. Actually, let me rephrase that question.

MR. NELSON:  Sure.

BY MS. SMITH:

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 46

Q.    When you spoke with your insurance company prior to this telephone conversation, did they tell you they had not received a bill from any anesthesiologist?

A.    I don't recall that wording.

Q.    During this recording that you just heard, did you tell my client that your insurance company told you they had not received a bill from any anesthesiologist?

A.    You would have to play that recording over again because I'm not sure if I said it in that or if I said anesthesiology associates.

Q.    We can listen to it again.

MS. SMITH:  Madam Court Reporter, do you want to go off the record while I play this again?

MR. NELSON:  I don't mind.

(Recording played)

MR. NELSON:  Okay.  Are we back on the record?

THE REPORTER:  Yes.

BY MS. SMITH:

Q.    So based on that telephone call, isn't it correct that you represented to my client that you had spoken to your insurance

Page 47

company and they had told you that they never received a bill from the anesthesiologist?

A.    They said that they did not receive a bill from the anesthesiology associates.

MS. SMITH:  We can play it again if you would like --

MR. NELSON:  I'm going to object.  Asked and answered.  I think he's answered the question.  You may not like the answer, but I think he has answered the question.  I don't think we need to replay the audio.

MS. SMITH:  No, I think this is a very important point, and it is the crux of the case.

BY MS. SMITH:

Q.    So if you don't know, then that's fine, but if you -- I'm asking if you represented to me client that your insurance company told you during this -- during this call what you represented to my client is that your insurance told you they never received a bill from the anesthesiologist?

A.    In the recording it says never received a bill from anesthesiology corporate,

Page 48

or whatever, associates.

Q.    You said both in that recording.  They never received a bill from Jupiter Anesthesia Associates, and earlier in the recording they never received a bill from the anesthesiologist, correct?

Let's listen to it again.

MR. NELSON:  I'm going to -- let's go off the record for a second and see if we can maybe discuss --

MS. SMITH:  You know, John, this is my deposition.  We're going to listen to it one more time.

MR. NELSON:  Fine.  Then I'll object.  I'll object as to form, asked and answer, and the recording can speak for itself.

He has not disputed the authenticity of the recording.  I think the recording can speak for itself.  He's asked and answered your question multiple times now.  If you're going to continue playing the recording for the next however many hours we have left in this deposition, I don't think you're going to necessarily get

Page 49

a different answer.

MS. SMITH:  Are you instructing your client not to answer?  I'm going to play the recording one more time.

MR. NELSON:  Sure.  One more time.

MS. SMITH:  All right.  Excellent.  Madam Court Reporter, let's go off the record while I play this --

MR. NELSON:  No, let's keep it on the record.  Let's keep it on the record.

MS. SMITH:  Excellent.  Keep it on the record then.

(Recording started)

"[Indiscernible] Mitchell Bluhm & Associates.  This call may be monitored and recorded for quality assurance purposes.  My name is Matt Walker.  I can help you.

"You said Matt Walker?

"Yes, that's correct.  Is this --

"Hi, my name is Roman Bogatschow.

"[Indiscernible] ▮▮▮▮ date

Page 50

of birth, just to make sure that's the right person.

"1██ .

"Yes, ██ , sorry about that, ██ is your date of birth, just make sure that's the right person.

"Right.

"And what's the collection?

"Is that at the time I had a ████████, I was insured with Sentry Healthcare.

"Well, let me take this so I get my legals out of the way. This call is to collect a debt. Just to make sure [indiscernible]. At this time our attorney with the firm is [indiscernible] particular circumstances of your account. This is in regards to Jupiter Anesthesia Associates, $2,016. And go ahead, and you said you were insured?

"Yes, I was insured by Sentry Healthcare, and they received the bill from the facility account and from the doctor that performed the ████████ , but they never did receive the bill from the

Page 51

anesthesiologist. They sent all the other bills, but I just contacted them, and I'll be glad to give you their phone number for you to contact the person I was talking to. She sent me [indiscernible] showing the Explanation of Benefits, and I'll be glad to email those to you. They do not show a billing from the Jupiter Anesthesia Associates.

"Well, the insurance will need to call us if they need to get a bill on this to pay on it.

"Call you. Okay.

"Yeah, the bills [indiscernible].

"I'll have them call you.

"They'll need to call us if they're still wanting to try to, you know, bill on this and pay on it.

"Okay. May I ask that do you have a phone extension number or anything?

"No, just use the 866-945-8627, and just when they call in, I'll get them over to our insurance department.

"Okay. All right. Thank

Page 52

you."

(Recording stopped)

BY MS. SMITH:

Q.   All right.  So for the third time now, in the recording, did you represent to my client when you spoke to your health insurance company, they told you they never did receive a bill from the anesthesiologist?

MR. NELSON:  I'm going to object as to form.  Asked and answered.  I am going to object as well in that the recording can and has spoken for itself.

Mr. Bogatschow, you may go ahead and answer the question.

THE WITNESS:  I've answered the question.

BY MS. SMITH:

Q.   You can answer me question.

MR. NELSON:  You can go ahead and restate your prior answer, if you would.

BY MS. SMITH:

Q.   You can answer my question.

A.   What I was saying, that the anesthesiologist from Jupiter Anesthesia Associates never sent the bill.

Page 53

Q.   Do you have any reason to believe that your insurance company would lie to you?

A.   No.

Q.   Do you have any reason to believe that your insurance company would not want to pay out this claim?

A.   No.

Q.   Has your insurance company ever lied to you before?

A.   No.  I should amend that and say not to the best of my knowledge.

Q.   Fair enough.  Thank you.

MS. SMITH:  Now, I'm going to show you a document I'm going to mark as Exhibit 4 to this deposition.

(Exhibit 4 was marked for identification.)

BY MS. SMITH:

Q.   These are some more of the discovery responses, and, I'm sorry, bear with me, Mr. Bogatschow.  These are going to get a little bit repetitive.  This is important because you have sued my client you understand for collecting a debt that you claim was paid by your insurance.

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 54

In the discovery responses, you have claimed in large part that this debt was fraudulent. So I want to go through these and make sure that I understand what your position on this case is because this is important as it seems like your position has changed a little bit, and I want to make sure I understand what it is now.

So in your request for admissions, Request No. 1, we asked you to admit that you incurred a debt originally owed to Jupiter Anesthesia Associates and you've denied that.

Is that correct or incorrect, did you, in fact, incur a debt to Jupiter Anesthesia Associates?

A.   I do not know all parties that were involved with the medical procedure --

Q.   Okay.

A.   -- that my insurance company paid for.

Q.   As of January -- as of January 4, 2016, did you incur any expenses to an anesthesiologist?

A.   I do not know all the parties that were involved with the medical procedure.

Page 55

Q.   Did you receive anesthesia on January 4, 2016?

A.   Yes.

Q.   Did you expect to pay for that anesthesia?

A.   Expected to pay for a procedure.

Q.   Did you expect your insurance to pay for that anesthesia?

A.   Yes.

Q.   Did you expect your insurance to pay for the services of the anesthesiologist that provided that anesthesia?

A.   Yes.

Q.   Did you expect that if your insurance denied coverage for the services of the anesthesiologist that provided that anesthesia that you would be responsible for it?

A.   Yes.

Q.   Do you have any reason to believe that Jupiter Anesthesia Associates was the company that employed the anesthesiologist that provided that anesthesia?

A.   I don't know.

Q.   Do you know of any other anesthesiologist associated with this -- strike

Page 56

that.

Q.   Do you know of any other anesthesiologist that was involved in your procedure?

A.   I don't know at this time.

Q.   Do you have any reason to believe that any anesthesiologist that was not employed by Jupiter Anesthesia Associates was involved with your procedure?

A.   No.

Q.   Okay. Request for Admissions No. 2 asks you to admit you did not pay Jupiter Anesthesia Associates, and you've denied this and said all amounts owed were for services rendered to you during the medical procedure at issue were paid by you or your insurance company.

Did I read that correctly?

A.   Yes.

Q.   You did not pay anything to Jupiter Anesthesia Associates, correct?

A.   No.

Q.   And your insurance company represented to you that it did not pay anything to Jupiter Anesthesia Associates, correct?

Page 57

A.   Correct.

Q.   And your insurance company represented to you as of the call that we just listened to that Jupiter Anesthesia Associates did not bill it for any services rendered to you during that procedure, correct?

A.   Correct.

Q.   So if it is, in fact, true that Jupiter Anesthesia Associates provided services to you during this procedure, wouldn't you -- wouldn't it be true that it has not been paid?

MR. NELSON:   I'm going to object on the grounds that the question calls for speculation. I'm going to object as to form. Calls for speculation.

You may go ahead and answer to the extent of your personal knowledge, Mr. Bogatschow.

THE WITNESS:   On the Explanation of Benefits is what they charge for anesthesia. I don't know what is involved in that charge.

BY MS. SMITH:

Q.   Does that charge identify Jupiter Anesthesia Associates?


(866) 715-7770
advancedONE.com

Page 58

A.    No.

Q.    Let's look at that charge.

MS. SMITH:  We're going to go to -- we're going to mark this as Exhibit 5.

(Exhibit 5 was marked for identification.)

BY MS. SMITH:

Q.    And it's a little bit small.  Do you want me to -- actually, I'll can make this bigger.

Can you see this document?

A.    I need it blown up some more.

Q.    This is the document you are referring to, correct?

A.    Yes.

Q.    And this document says provider description of service, correct?

A.    Yes.

Q.    And it says Jupiter Medical Center, correct?

A.    Yes.

Q.    And then it says on Line 2, R370/anesthesia/general, correct?

A.    Correct.

Q.    And then it gives Claim Number/Date

Page 59

of Service, and then it says January 4, 2016, to January 4, 2016, correct?

A.    Correct.

Q.    And then it says Charges Submitted, $395, correct?

A.    Yes.

Q.    And then it says Discount, $156.11, correct?

A.    Yes.

Q.    Nowhere on this form does it say Jupiter Anesthesia Associates, correct?

A.    Correct.

MS. SMITH:  Now, let's go to what I'm going to mark as Exhibit 6, the document called validation 2.20.2019.

(Exhibit 6 was marked for identification.)

BY MS. SMITH:

Q.    And this is a letter that my client sent to you on February 20, 2019.

Have you seen that document before?

A.    Yes.

Q.    And you received this document, correct?

A.    Correct.

Page 60

Q.    Somewhere near the end of February or the beginning of March of 2019?

A.    Yes.

Q.    And the second page -- I'm sorry -- the third page of this document is a printout from Jupiter Anesthesia Associates, or that is what it appears to be, correct?

A.    Correct.

Q.    And partway down the document, it provides some medical codes.  It says a procedure and then it gives the amount of $2,016, correct?

A.    Correct.

Q.    And that is different than $395, isn't it?

A.    Yes.

Q.    And then towards the bottom of the middle of the document or the body of the document it says Admission of Anesthesia, correct, or administration of anesthesia, correct?

A.    Correct.

Q.    And nowhere on this document does it say Jupiter Medical Center, does it?  Actually, it does.  Sorry.  In the middle of the document,

Page 61

it says Jupiter Medical Center, correct?

A.    Correct.

Q.    And then it has a doctor's name, correct?

A.    Yes.

Q.    And nowhere on the document does it say $395, correct?

A.    Correct.

Q.    And nowhere on this document does it indicate that this was paid by insurance, correct?

A.    Correct.

Q.    And this document was printed on February 15, 2019, correct?

MR. NELSON:  I'm going to object on the -- as to form based upon it calls for Mr. Bogatschow to speculate on when a third party has printed a document that he later received.

MS. SMITH:  Okay.  Let me withdraw the question.

BY MS. SMITH:

Q.    The date on this document is February 15, 2019, correct?

A.    Correct.

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 62

Q.    And on this document where it says Invoice and then Date and Code, it says January 4, 2016, correct?

A.    Yes.

Q.    And that was the date of your procedure, correct?

A.    Yes.

Q.    Do you have any reason to believe that Jupiter Anesthesia Associates -- strike that.

Do you have any reason to believe that the $395 that was listed on the invoice or the Explanation of Benefits we looked at in the previous documents and the $2,016 listed in this document is for the same charge?

A.    I don't know how they adjust their billings.

Q.    And to confirm, your insurance company said that it never received a bill from an anesthesiologist, correct?

A.    They never received it from Jupiter Anesthesia Associates.

Q.    Let's go back to the request for admissions responses.

Request No. 3 asks you to admit that

Page 63

you expected Jupiter Anesthesia Associates to bill your insurance. You objected to this because it was vague as you didn't know what you expected Jupiter Anesthesia Associates to bill your insurance for, and then you denied this request for admissions.

Did you expect the anesthesiologist associated with your procedure to bill your insurance company?

A.    I expected there to be some sort of billing, yes.

Q.    And back in your Complaint, and we can flip back to that if you want, it says that you underwent a medical procedure and received anesthesia from Jupiter Anesthesia Associates, correct?

MR. NELSON:  I'm going to object as to the form.  This question was asked and answered.

But you can go ahead and respond, Mr. Bogatschow.

THE WITNESS:  Received anesthesia.  I don't know the name of the organization.

Page 64

BY MS. SMITH:

Q.    Do you have any reason to believe that somebody -- that anybody other than Jupiter Anesthesia Associates provided you anesthesia for this procedure?

A.    I don't know.

Q.    Did you expect to submit the bill to your insurance company for the anesthesia for this procedure?

A.    Say again?

Q.    Did you expect to be -- that you would be responsible for submitting the bill to your insurance for this procedure?

A.    No.

Q.    Did you expect your primary care physician would be the one to submit the bill for the anesthesiologist to your insurance for this procedure?

A.    I don't know the procedures of who sends the bills to the insurance company.

Q.    Did you speak with your insurance company before the procedure about who was going to submit the bills for each provider to the insurance company associated with your procedure?

Page 65

A.    I don't recall.

Q.    Were you -- strike that.

Were you worried about who -- ensuring that all the providers would be paid for this procedure?

A.    No.

Q.    Were you concerned in any way that you would have to pay any of the bills that were not paid by your insurance company?

A.    I think so.

Q.    You think so, or you don't think so? I'm sorry.

A.    I said I think so.

Q.    Why is that?

A.    You don't like to pay bills for, you know, whatever insurance doesn't cover.

Q.    I'm sorry.  Say that one more time.

A.    I said nobody likes having to pay out of pocket.

Q.    So to ensure that your insurance -- so to ensure that your insurance would pay all the bills, what do you think -- strike that.

In general, what would your typical process be if you or your wife was having a medical procedure to ensure all of the bills are

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 66

paid by your insurance?

A.   Typical procedure is to have your provider contact the insurance company to find out whatever co-pays there would be and deductibles.

Q.   But you don't know if you expected the anesthesiologist to bill your insurance?

MR. NELSON:  Mr. Bogatschow, I'm having a little bit of trouble hearing your responses.  I don't know if there's a way for you to increase the volume or perhaps sit closer.  I know it's been a long deposition so far, but if we can do that, that would be helpful for me.

THE WITNESS:  Okay.

BY MS. SMITH:

Q.   All right.  Let's go down to No. 4. This asks you to admit in the year following the medical procedure that you did not follow up with Jupiter Anesthesia Associates to confirm the account was satisfied, and you denied this and said that you followed up with the medical providers that billed your insurance to ensure that any amounts owed for the medical procedure were paid.

Page 67

Did I read that correctly?

A.   Yes.

Q.   So assuming that Jupiter Anesthesia Associates was the -- did employ the anesthesiologist that performed -- that was involved with your procedure, why did you not follow up with them to confirm your account was paid?

MR. NELSON:  I'm going to object as to form of the question because it calls for my client to speculate on assumptions.

MS. SMITH:  I was giving a hypothetical.

MR. NELSON:  I'm going to object to the form of the question as a hypothetical that calls for speculation on behalf of my client.  If you want to ask him about his personal knowledge, I won't object to that.

MS. SMITH:  Let me withdraw the question.

BY MS. SMITH:

Q.   In the year following your medical procedure, did you follow up with the anesthesiologist to confirm that the

Page 68

anesthesiologist's bill was paid?

A.   No.

Q.   Did you follow up with any of your medical providers to ensure that their bills were paid?

A.   No.

Q.   Request No. 5 says admit in the year following the medical procedure you did not check with your health insurance company to confirm that the claim for Jupiter Anesthesia Associates was submitted, and you denied this and said that you followed up with your insurance to make sure all medical providers who build him and his insurance received payments?

Mr. Bogatschow, did you check with your insurance company in the year after your procedure to confirm that anesthesiologist was paid?

A.   No, I did not.

Q.   Did you -- in the year following your procedure, did you check with your insurance company to confirm that any of the medical providers involved in your procedure were paid?

A.   Nothing other than what was on the Explanation of Benefits.

Page 69

Q.   Request for admissions No. 6 asked you to admit that prior to filing the lawsuit you learned that Jupiter Anesthesia Associates did not bill your health insurance for the subject debt.  You've denied this and said that you don't have any personal knowledge of whether Jupiter Anesthesia Associates billed your health insurance, and you have no evidence that Jupiter Anesthesia Associates billed your health insurance.

A.   Is that a question?

Q.   Yes.

You've testified that you believe that the anesthesiologist was paid; is that correct?

A.   I believe there was a bill for anesthesia services paid.

Q.   But not necessarily the anesthesiologist?

A.   I don't know one way or the other.

Q.   Did you call Jupiter Medical Center to clarify whether that was the anesthesiologist or just for any anesthesia at any point?

A.   I don't recall at this time.

Q.   Did you discuss that with your

Page 70

insurance company?

A.    I may have.

Q.    Do you remember what they told you?

A.    No, I don't.

Q.    Do you remember calling Jupiter Anesthesia Associates?

A.    I don't remember.

Q.    Wouldn't that be an important thing to do after you got a bill from Jupiter Anesthesia Associates for $2,000?

A.    It's your opinion.

Q.    Would you not want to know whether the bill that was paid was for anesthesia or anesthesiology?

A.    I don't know what would validate was paid by insurance, except what's on the Explanation of Benefits.

Q.    Do you think that would be prudent to know before you filed a lawsuit alleging my clients collected a debt that was paid?

A.    It's for the court to decide.

Q.    Request No. 7 asks you to admit that prior to filing this lawsuit you learned that your health insurance did not pay the subject debt.  And, again, the subject debt refers to

Page 71

the debt referenced in your Complaint, the Jupiter Anesthesia Associates debt that you mentioned in your Complaint, and you've denied this as to the debt owed in the alleged original creditor and that you've admitted that you -- strike that.

You have stated that the subject debt was never owed and is based on fraud.

Do you believe that still?

A.    I don't know if it was fraud or not. I can't prove it wasn't.

Q.    But you don't know if it was for anesthesia or anesthesiology, correct?

A.    Correct.

Q.    So you don't know if my clients were collecting a debt that was paid or not, correct?

A.    I do not know.

Q.    Do you believe a debt that was owed but was paid for is fraudulent?

A.    They tried to collect this amount.

Q.    If I tried to collect a debt from you that I owed you but somebody else had already paid, would you say that debt is fraudulent? You would say that debt is fraudulent?

A.    Yes.

Page 72

Q.    Would you say that's different than a debt that never existed?

A.    I guess not.

Q.    So in your mind, a debt that was owed but is paid is the same as a debt that was never owed, that's make believe?

A.    Sorry.  Say that again, please.

Q.    Sure.

A debt that is make believe and a debt that was owed but was paid, are those the same in your mind?

A.    Say again, please.

Q.    Sure.  Let me say it this way.

Let's say my client tries to collect a debt that is completely made up, you never owed it in the first place, it's make believe, is that the same in your mind as trying to collect a debt that you owed but you already paid?

A.    Yes.

Q.    Those are both fraud in your mind?

A.    Yes.

Q.    In both cases the debt is fraudulent?

A.    I think so.

Q.    In your job, do you ever work with

Page 73

subcontractors?

A.    Yes.

Q.    If a subcontractor sent you an invoice for work they didn't do, would you call that fraudulent?

A.    Yes.

Q.    What if they sent you an invoice for work that they did but you had already paid them for it, would you call that fraudulent?

A.    Yes.

Q.    What if they just made a mistake? You wouldn't consider them just wrong?

A.    I guess I would.  What are the circumstances on the mistake?

Q.    What if they made an error and they believed they hadn't been paid?

A.    Go on.

Q.    They sent you an invoice that you had already paid and they believed that you had not paid it.

A.    Okay.  Give me some dates or some time span.

Q.    I'm sorry?

A.    Give me some dates or a time span. Do they correct their mistake in 30 days time or

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

Page 74

what?

Q.   Let's say it's a year ago.  Let's say it's five years ago.

A.   Then it probably is fraud.

Q.   Even if they believed you had not paid it but you had for work rendered, for work provided?

A.   Tell me the process for saying that it is a mistake.

Q.   They just made an error in their accounting.

A.   So what steps did they take after that?

Q.   I'm not sure I understand.

A.   Do they withdraw their claim?  Do they apologize?  Do they pay a penalty fee?  What?

Q.   No.  I'm asking for the initial demand for money.  I'm just asking about the initial demand for money.

A.   I don't know what the time of the calendar looks like if they made a mistake versus being a fraud.

Q.   Okay.  Fair enough.

So request for admission No. 8 says

Page 75

admit that prior to filing this lawsuit you learned that no claim was submitted to your health insurance provider within one year of the medical procedure giving rise to the subject debt.  You have denied this and said that all medical providers who were authorized to bill for the procedure did, to your knowledge, billed your insurance and that the alleged subject debt is not and was never owed and is based on fraud.

Do you believe that to this day?

A.   I think that it is not right that they would not attempt to bill the insurance company.  They waited long enough that -- I believe that it was not right that they didn't bill the insurance company.

Q.   That's not what the -- that is not what the question is, sir.

It says did you learn -- admit that prior to filing this lawsuit, did you learn that no claim was submitted to your health insurance provider within one year of the medical procedure giving rise to the claim.

Let's start with a yes or no.  Is that correct?

MR. NELSON:  I'm going to

Page 76

object to the question as to form as currently stated.  I think we're -- I think we are mixing up some of the questions.  Kirsten, you stated the request.  You did state what the request was, but your question was regarding is the response to the request.  So if you can kind of rephrase maybe.

MS. SMITH:  I just -- I'm now asking if that -- I am now asking him to say yes or no if he thinks the request is correct.

MR. NELSON:  Which?  Request No. 8?

MS. SMITH:  Yes.  Not the response, the request.

MR. NELSON:  You're asking him to admit or deny Request No. 8?

MS. SMITH:  Yes.

MR. NELSON:  Okay.  I will object to the question on the grounds that it has been already responded to, asked and answered in the responses to the request for admissions that were provided.

Mr. Bogatschow, you may, you

Page 77

know, answer the question to the best of your knowledge notwithstanding my objection.

THE WITNESS:  I do not know what they did.

BY MS. SMITH:

Q.   Do you believe that within one year of filing -- within one year of your procedure that all medical providers were authorized to bill for your procedure did so?

A.   To the best of my knowledge, yes.

Q.   Why did you tell your insurance company to contact Bluhm then?

A.   That's the standard procedure to verify.

Q.   Verify what?

A.   Verify the claim.

Q.   Can you explain that?

A.   To verify that they did perform services and what they're -- what they should pay.

Q.   Could you expand on your answer?  I'm not sure I understand it.

A.   That is the insurance's -- insurance, whatever the legal side is, to verify services performed.

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 78

Q.    To verify that they paid it or to verify that they aren't obligated to pay it?

A.    Obligated.

Q.    So you believed it had not been paid yet?

A.    I believe that they had -- yeah, I believe they hadn't been -- had billed.

Q.    You believe it had not been billed yet?

A.    Correct.

Q.    And if it had not been billed yet, it would not have been paid yet, correct?

A.    Well, I believe they had -- they had billed them for that amount.

Q.    Have you ever heard of an insurance company paying something it had not been billed for?

Do have any reason to believe your insurance company routinely pays things that it does not receive bills for?

A.    I have no reason to think that.

Q.    Do you have any reason to believe your insurance company routinely pays fraudulent claims?

A.    I have no reason to believe that.

Page 79

Q.    Well, do you have any reason to tell your insurance company to contact a debt collector that is attempting to collect a fraudulent claim?

A.    Do not know whether it's a fraudulent claim or not.  Let insurance cover it, make that determination.

Q.    But you believe the claim had not been billed to the insurance company, correct?

A.    Correct.

MS. SMITH:  Let's take a ten-minute break.

MR. NELSON:  Okay.

(Brief break.)

MS. SMITH:  I'm going to show you -- I am going to mark this as whatever the next exhibit in the list is.

MR. NELSON:  I believe it's 7.

MS. SMITH:  I was going to say 7.  Thank you.

(Exhibit 7 was marked for identification.)

BY MS. SMITH:

Q.    Mr. Bogatschow, have you ever seen this document before?

Page 80

A.    Yeah, I guess I have.  It's been a while.

Q.    Do you remember receiving this document?

A.    I guess.

Q.    Was that around the same time that you spoke to my client the first time?

A.    I think so, yes.

Q.    Maybe a little bit after?

A.    I don't recall which one came first.

Q.    And it's from WebTPA, correct?

A.    Yes.

Q.    And it says Group:  CHC Companion, correct?

A.    Yes.

Q.    And it has your name on it, correct?

A.    Yes.

Q.    And it has Member ID:  ▮0584-01, correct?

A.    Yes.

Q.    Do you recall if that is your policy number for the policy that covered the procedure at issue here?

A.    I don't recall.

Q.    All right.  Let's go to the

Page 81

Explanation of Benefits, and see if that matches.

Your member ID is ▮0584-01.  Is that the same number?

A.    Yes.

Q.    And this is from WebTPA, correct?

A.    Yes.

Q.    And it says -- this letter says that TPA is the third party claims administrator for Companion Life Insurance Company and that we've received your request to review the correspondence we received.

This letter is dated January 31, 2019, correct?

A.    Yes.

Q.    And the conversation you had with my client, the one that we listened to the recording for three times, that was on January 14, 2019, correct?

A.    Yes.

Q.    And this letter says in part, the member's policy is a limited benefit fixed indemnity benefits policy that pays specific benefit amounts for designated services specifically listed in the schedule of benefits

AdvancedONE
LEGAL

(866) 715-7770
advancedONE.com

Page 82

and the Certificate of Insurance.  This is not a major medical policy and does not pay a percentage of all medical expenses.  In order to respond to your request, we need to know exactly what claims you are referring to that has a balance of $2,016 for the date of service January 4, 2016.

Q.  Did you respond to this letter?

A.  I don't know.

Q.  Would it not be important to respond to this letter since they were asking you for additional information about the claim?

A.  I suppose so.

Q.  Would you keep a file of documents if you had responded to it?

A.  Yes.

Q.  Did you look for those documents before filing this lawsuit?

A.  I don't recall.

Q.  If you had responded to this letter, would you have a copy of those documents today, do you believe?

A.  I don't.

Q.  Did you contact WebTPA before filing this lawsuit to check the status of this claim?

Page 83

A.  I believe so.

Q.  And what was the response?

A.  Oh, I did receive an email from [indiscernible], Shantaria.

Q.  What did that say?

A.  She provided me copies of the Explanation of Benefits that she had copies of.

Q.  When was that email?

A.  I'm not sure.  Probably 2019.

Q.  I'm sorry.  What year?

A.  2019.

Q.  Did she provide you with anything else?

A.  I don't think so.

Q.  Where did you get the Explanation of Benefits that you have provided in this case that I just showed you?

A.  Bluhm gave me by email.

Q.  That's what was attached to the email?

A.  Yes.

Q.  Do you have any other documents relating to the procedures still?

A.  I don't know.

Q.  Have you looked for them?

Page 84

A.  No.

Q.  Did you look for them before filing this lawsuit?

A.  Yes.

Q.  Did you find them?  Did find any?

A.  No.

Q.  Do you have any emails relating to your procedure?

A.  Just the ones that I provided.

Q.  What emails are those?

A.  That was the one from Shantaria.

Q.  How many telephone calls did you have with your insurance company?

A.  I don't recall.

Q.  Did you call your doctor to confirm what anesthesiologist they used?

A.  I don't recall.  I believe I asked them for it.

Q.  What about your wife, do you know if she made any telephone calls relating to this case or related to your procedure?

A.  Called the Mitchell Bluhm company.

Q.  Do you know if she called the doctor that you had the procedure with?

A.  I don't recall.

Page 85

Q.  Do you know if she sent any emails relating to this case to the doctor that you had the procedure with?

A.  I don't recall.

Q.  Let me go back to your Complaint for one minute.

As you sit here today, Mr. Bogatschow, just going to go through this because this is important, I want to make sure that I understand which of these allegations, as you sit here today, are correct.

It is correct that on January 4, 2016, you underwent a medical procedure, correct?

A.  Correct.

Q.  And you received anesthesia, correct?

A.  Correct.

Q.  Okay.  For most of these, I want you to tell me if it's true, untrue or you don't know.

A.  Okay.

Q.  Okay.

MR. NELSON:  I'm going to -- I'm going to object as to the form of the question.  I believe my client can respond

Page 86

to the best of his ability and cannot necessarily be constrained into, you know, one word answers if he believes a more fulsome answer is required.

MS. SMITH: Absolutely.

BY MS. SMITH:

Q. I guess true, untrue, you don't know and you can expand on them.

So did you receive anesthesia from Jupiter Anesthesia Associates?

A. I don't recall who it was that provided anesthesia.

Q. Is it true, untrue or you don't know that you were billed for this service by Jupiter Anesthesia Associates?

A. It's not true.

Q. As you sit here today, is it true, untrue or you don't know that you received a letter from my clients in January of 2019 alleging that you owed a debt to Jupiter Anesthesia Associates?

A. That's true.

Q. Is it true, untrue or you don't know that you checked your Explanation of Benefits after receiving that letter?

Page 87

A. That's true.

Q. Okay. Is it true, untrue or you don't know that your Explanation of Benefits indicated that you did not owe any balance for the services rendered by Jupiter Anesthesia Associates for the procedure?

A. I don't know.

Q. As you sit here today, do you believe that as of February 20, 2019, you did not owe a balance to Jupiter Anesthesia Associates?

A. It's true.

Q. As you sit here today, do you believe that as of February 20, 2019, your insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016?

A. I do not know, to the best of my knowledge.

Q. I only have a few more questions, and I am going to ask you these questions. I just want a yes or no answer, but I want you to wait and give your attorney a chance to object. So wait a few minutes to give your attorney a chance to object before you respond.

Do you understand?

Page 88

A. Yes.

Q. And just a yes or no answer.

Are you aware that my client believes that this case was filed in bad faith based on the misrepresentations or alleged misrepresentations in the Complaint?

MR. NELSON: I'm going to object to the extent this request calls for the disclosure of confidential attorney-client information. I'm going to instruct my answer not to respond to this. If you're going to continue to ask a series of questions, I'm going to object right now. Those series of questions are getting into questions about communication between my client and his legal counsel.

I mean, if you just want to state the threats that your client wants to make to my client on the record, then I suppose you can do that, but I'm going to object to each of the questions if you're going to ask whether or not my client -- ask for responses from my client regarding his communications with his legal counsel.

MS. SMITH: I'm just asking if

Page 89

he's aware.

MR. NELSON: Okay. Well, if you want to convey your client's threats, you may do that.

BY MS. SMITH:

Q. Are you going to listen to your attorney's instructions not to answer that question, Mr. Bogatschow?

A. I will not answer.

Q. Okay. And are you aware that if my client prevails in this action, it may ask the Court to award it its attorney's fees for filing this case in bad faith based on the misrepresentations in the Complaint.

MR. NELSON: I'm going to object, again, to the question on the basis -- as to form on the basis that it calls for the disclosure of confidential attorney-client communications. I'm going to request that you, you know, cease asking questions of my client. If you want to just simply convey threats, then do so.

MS. SMITH: That is not correct.

MR. NELSON: But I'm going to

AdvancedONE LEGAL

(866) 715-7770
advancedONE.com

Page 90

ask that you cease a line of questioning that inherently calls for the disclosure of confidential attorney-client communications.

I'm going to instruct my client not to answer this question.

MS. SMITH: It actually does not ask for attorney-client communications.

BY MS. SMITH:

Q. Mr. Bogatschow, are you going to answer the question or not.

A. I will not.

Q. Okay.

MS. SMITH: Excellent. Then I do not have anything further.

MR. NELSON: Okay. Then if we can take a short five-minute break, and then I will have redirect.

MS. SMITH: Okay.

(Brief break.)

EXAMINATION

BY MR. NELSON:

Q. All right. Mr. Bogatschow, I'm going to ask you a few questions. This is what's called a redirect. I have an opportunity to ask

Page 91

questions after Ms. Smith has asked questions.

I want to start with going back to the billing or lack of billing that occurred from Jupiter Medical.

Now, did you ever -- or Jupiter Anesthesia Associates. I apologize.

Did you ever receive a bill from Jupiter Anesthesia Associates, Mr. Bogatschow?

A. No, I did not.

Q. Did you receive a bill from Mitchell D. Bluhm & Associates?

A. Yes.

Q. Who did they claim the bill was owed to? Who did they claim was the current owner of that debt? Do you recall?

A. Mitchell Bluhm.

Q. Okay. And did you ever receive a bill from CF Medical, LLC?

A. No, I don't think so.

Q. Okay. Now, the bill that you received from Mitchell D. Bluhm & Associates, what did that bill claim the services were for, do you recall?

A. A particular anesthesiologist.

Q. Okay. And was that --

Page 92

A. Maxson or something.

Q. Was the anesthesiologist that the Mitchell Bluhm Associates bill claimed the debt was for, was that Jupiter Anesthesia Associates, to your recollection?

A. Yes, I believe so.

Q. Okay. Is that the basis for your belief that the alleged debt was for services rendered by Jupiter Anesthesia Associates?

A. Yes.

Q. Okay. So I want to make sure I understand.

So the basis of your belief that the debt Mitchell D. Bluhm & Associates was attempting to collect from you, that was based upon the communication from Mitchell D. Bluhm & Associates; is that correct?

A. Yes.

Q. Okay. Now, I want to talk a little bit about the Complaint and your discussion of the debt in the Complaint. I apologize I do not know what the exhibit number was.

MR. NELSON: Exhibit 1? Is that what I am seeing? Okay. Exhibit 1. So this was Exhibit 1 for the record.

Page 93

BY MR. NELSON:

Q. And this is the Complaint that you filed against Mitchell D. Bluhm & Associates and GF Medical, LLC.

Can you see this Complaint on the screen, Mr. Bogatschow?

A. Yes, I see it.

Q. Okay. Now, I have now highlighted -- and please let me know if I'm going in and out. I keep getting a message saying my microphone is changing. So if there's a moment that you cannot hear me, would you please let me know?

A. Okay.

Q. But on Paragraph No. 22 here, I'm going to try to highlight this paragraph, do you see where I've highlighted Paragraph No. 22?

A. Yes.

Q. And in Paragraph No. 22, you state that you received anesthesia from Jupiter Anesthesia Associates; is that correct?

A. Yes.

Q. Was that based upon representations made by Mitchell D. Bluhm & Associates?

A. Yes.

Q. Okay. Now, No. 23, another paragraph

Page 94

that was discussed at some length, you state that you were billed for this services by Jupiter Anesthesia Associates which forms the basis of the debt that Mitchell D. Bluhm & Associates and CF Medical later attempted to collect from you.

Is that more or less what Paragraph 23 says?  I paraphrased a bit, but is that more or less what Paragraph No. 23 says?

A.    Yes.

Q.    Okay.  Now, you testified you did not receive a bill from Jupiter Anesthesia Associates; is that correct?

A.    Correct.

Q.    Okay.  But you did receive a bill from Mitchell D. Bluhm & Associates?

A.    That is correct.

Q.    Okay.  And that bill -- who did that bill claim was -- provided the service that they are trying to collect on?  Do you recall?

A.    I'm sorry.  Say that again, please.

Q.    The bill from Mitchell D. Bluhm & Associates, who did it claim rendered the services that formed the basis of the debt?

A.    It was the -- Jupiter Anesthesia

Page 95

Associates.

Q.    Okay.  I want to talk a little bit about your communications with Mitchell D. Bluhm & Associates after you received that collection letter.

What did you do after you received that collection -- that first collection letter from Mitchell D. Bluhm & Associates?

A.    I contacted the insurance company, CHC.

Q.    Okay.  Did you call Mitchell D. Bluhm & Associates at any point?

A.    I did, but I don't recall if I called them first or if I called the insurance company first.

Q.    Okay.  But you did contact Mitchell D. Bluhm & Associates after receiving that letter; is that correct?

A.    Yes.

Q.    Okay.  Did you speak with anyone at Mitchell D. Bluhm & Associates about the alleged debt?

A.    I believe I did, yes.

Q.    Did you authorize Mitchell D. Bluhm & Associates to speak to your insurance company

Page 96

about the debt?

A.    Yes, I believe I did.

Q.    Did you speak to your insurance company authorizing Mitchell D. Bluhm & Associates to talk to them about the alleged debt?

A.    Yes.

Q.    Okay.  When was the first time that you were notified of the claim that you owed money for services rendered by Jupiter Anesthesia Associates?

A.    It was January of 2019.

Q.    Okay.  Who notified you of that?

A.    Mitchell Bluhm Associates or Mitchell Bluhm.

Q.    Okay.  Let's talk a little about the procedure itself.

Now, earlier you said that prior to going through the procedure you sought to have the procedure pre cleared with your insurance; is that correct?

A.    Yes.

Q.    Okay.  Now, did you make any -- did you make any payments prior to the procedure, to your recollection?  Do you remember making any

Page 97

payments to Jupiter Medical Center, to any medical providers prior to the procedure?

A.    I don't recall at this time.

Q.    Okay.  Now, do you remember meeting a Dr. Matteo Rosselli?

A.    I don't recall.

Q.    Do you know Dr. Matteo Rosselli?

A.    No.

Q.    Do you remember ever dealing with Jupiter Anesthesia Associates, LLC?

A.    No.

Q.    Have you dealt with Jupiter Medical Center?

A.    Yes.

Q.    Okay.  And tell me about Jupiter Medical Center now.  I believe you said that your primary care physician was located in the same building as the doctor who performed the procedure?

A.    Yes.

Q.    To your knowledge, is that the Jupiter Medical Center building?

A.    Yes.

Q.    Okay.  To your knowledge, have you paid Jupiter Medical Center?  Have you ever paid

Page 98

anything, either for this procedure or prior to this procedure?

A.    Say that again.  Your mic cut in and out.

Q.    Yeah, I think it did.  I don't know what issue I'm having.

Do you recall ever paying Jupiter Medical Center anything, not through your insurance, but you yourself, whether for your primary physician or for this procedure?

A.    I don't recall at this time.

Q.    Do you know whether you provided Jupiter Medical Center with your insurance information?

A.    I did.

Q.    To your knowledge, did Jupiter Medical Knowledge ever send a bill to your insurance for the procedure?

A.    They did.

Q.    Do you know who Dr. Maxson is?

A.    I believe he was the one that performed the procedure.

Q.    Okay.  Did you meet him prior to the procedure?

A.    I'm not sure.  I don't recall.

Page 99

Q.    Okay.  To your knowledge, did your insurance company pay Dr. Maxson for any of his services during the procedure?

A.    I believe they did.

Q.    Okay.  Do you believe you owe Jupiter Anesthesia Associates any money?

A.    No, I don't.

Q.    Do you believe that you owe CF Medical, LLC, any money?

A.    No, I don't.

Q.    Do you believe that you owe Mitchell D. Bluhm & Associates any money?

A.    No, I do not.

Q.    Do you believe the amount that Mitchell D. Bluhm & Associates sought to collect from you was a correct amount?

A.    No, I don't believe that.

Q.    You don't believe it was a correct amount, or you do believe it was a correct amount?

A.    I don't believe it was a correct amount.

Q.    Do you believe that you or your insurance company would be in a better position to determine the validity of a medical bill that

Page 100

you received?

A.    I believe the insurance company would be in a better position.

Q.    Okay.

MR. NELSON:  I don't have any further questions at this time.

MS. SMITH:  Thank you, Mr. Bogatschow.  I know it was a long day, but I appreciate your time.

THE REPORTER:  Do you want this transcribed?

MS. SMITH:  Yes.

MR. NELSON:  Yes.

MS. SMITH:  I'll order an electronic copy.

MR. NELSON:  We will order an electronic copy as well.

(Deposition ended at 12:43 p.m.)

Page 101

THE STATE OF GEORGIA:

I, Lori Roy, Registered Professional Reporter and Certified Court Reporter in and for the State of Georgia, hereby certify that this deposition transcript taken remotely is a true record of the testimony given by the witness named herein, after said witness was duly sworn or affirmed by me.

I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken.

Further, I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

Subscribed and sworn to on this, the 17th day of March, 2021.

*Lori Roy*
_____
Lori Roy, RPR, CCR
CCR No. B-2278
Expires December 31, 2021