**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **ROMAN BOGATSCHOW,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:20-CV-59 (MTT)** |
| ) | |
| **CF MEDICAL LLC, *et al.*,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Defendants CF Medical, LLC and The Law Offices of Mitchell D. Bluhm &

Associates, LLC have moved for summary judgment on Plaintiff Roman Bogatschow's

claims arising from the attempted collection of an unpaid medical debt.  Doc. 18.  For

the following reasons, the defendants' motion for summary judgment is **DENIED**.

## I. BACKGROUND[1]

On January 4, 2016, Bogatschow underwent a medical procedure at Jupiter

Medical Center.  Docs. 20-2 ¶¶ 2-3; 28-1 ¶¶ 2-3.  Jupiter Medical Center and the doctor

who performed the procedure billed Bogatschow's insurance company, and after the

procedure, Bogatschow received an explanation of benefits from his insurance

company that explained Jupiter Medical Center and the doctor had been paid in full.

Docs. 20-2 ¶¶ 7-8; 28-1 ¶¶ 5-8.  The explanation of benefits had a line item for

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

"anesthesia" that appeared to show the anesthesia Bogatschow received was covered by his insurance.  Docs. 20-2 ¶ 9; 28-1 ¶ 9.  Bogatschow did not receive any other medical bills from the medical procedure.  Doc. 20-2 ¶ 10.

In his complaint, Bogatschow alleged that he received anesthesia from Jupiter Anesthesia Associates and was billed by that company.  Doc. 1 ¶¶ 22-23.  Bogatschow subsequently clarified, however, that he believed the "anesthesiologist was provided by Jupiter Medical Center and [he] was billed by Jupiter Medical Center."  Doc. 20-1 ¶ 1.  Moreover, Bogatschow states that he never received an invoice, statement, or bill from Jupiter Anesthesia Associates.  Docs. 20 ¶ 1; 20-3 ¶¶ 8-13.  In other words, he did not know that he owed any money to Jupiter Anesthesia Associates for the medical procedure.[2]

On January 4, 2019, three years after the medical procedure, Bogatschow received a letter from Defendant Mitchell D. Bluhm & Associates ("Bluhm") that claimed Bogatschow owed $2,016.00 to CF Medical LLC.  Docs. 20-2 ¶¶ 15-16; 28-1 ¶¶ 15-16.  The letter stated that Jupiter Anesthesia Associates had sold the debt to CF Medical LLC.[3]  Docs. 18-2 ¶ 9; 20-2 ¶ 9; 20-10 at 2.  The letter further stated that CF Medical had tasked Bluhm with collecting the debt.  Doc. 20-10 at 2.  The last paragraph of the letter stated that "[t]his is an attempt to collect a debt.  Any information obtained will be used for that purpose.  This communication is from a debt collector."  *Id*.

---

[2] In fact, Bogatschow claims that he never owed money to Jupiter Anesthesia Associates at all.  Doc. 20 at 1.

[3] Bogatschow disputes this fact because he was only informed that CF Medical "acquired" the Jupiter Anesthesia Associates debt and not that it was "sold" to them.  Doc. 20-1 ¶ 9.  Both parties engaged in this sort of nitpicking.  And while the Court is at it, Bogatschow's closing argument-style-brief is not at all helpful.  Counsel should save the hyperbole for the jury.

Bogatschow called Bluhm, who told Bogatschow that his insurance company should call Bluhm's insurance department, so Bogatschow had his insurance company call Bluhm.  Docs. 20-2 ¶¶ 27-28, 30; 28-1 ¶¶ 27-28, 30. Bogatschow was then informed that his insurance company never received or paid a bill from Jupiter Anesthesia Associates.  Docs. 18-2 ¶¶ 11-12; 20-1 ¶¶ 11-12.

Bogatschow disputed the validity of the debt, and Bluhm responded with a letter on February 20, 2019.  Docs. 18-2 ¶ 18-19; 20-1 ¶¶ 18-19.  The nature and purpose of this letter is critical because Bogatschow filed suit on February 17, 2020, and the February 20, 2019 letter is the only communication within the Fair Debt Collection Practices Act's ("FDCPA") one-year statute of limitations.  The defendants argue that the February 20 letter was simply a letter responding to Bogatschow's request for debt validation.  Doc. 28-1 ¶¶ 34-43.  Bogatschow argues that it was a debt collection letter in violation of the FDCPA.  Doc. 20-2 ¶¶ 34-43.  The letter stated that:

> [Bluhm] received [Bogatschow's] dispute regarding the validity of the above-referenced account(s).  Enclosed is the verification of debt we obtained from the current creditor, CF Medical LLC.  The verification is labeled "statement of account" and sets forth the outstanding balance for services rendered by the medical provider stated above.  The outstanding balance is the obligation of the responsible party for the account(s).
>
> The medical provider sold the account(s) to CF medical LLC and removed the balance from its records.  An itemization of medical services we obtained from the medical provider is also enclosed as a courtesy, which reflects a balance of $0 because the medical provider sold the account(s).  The balance that was purchased by CF Medical LLC is the obligation of the responsible party for the account(s).
>
> This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

Doc. 1-1 at 1.

The defendants argue that summary judgment is appropriate because the February 20 letter, although it stated that it was a "communication … from a debtor collector" and was "an attempt to collect a debt," was not a communication in connection with collecting a debt and thus it could not have violated the FDCPA.  Docs. 28-1 ¶¶ 38-40.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. Cty. of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's

case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A.  The Scope of Bogatschow's Claims**

First, the parties disagree about the scope of Bogatschow's claims.  The defendants argue that Bogatschow's complaint, which was never amended, rests only on his allegation that his insurance company paid the bill from Jupiter Anesthesia Associates, the debt now in question.  Doc. 18-1 at 8-11.  The defendants argue it is now undisputed that the insurance company did not pay Jupiter Anesthesia Associates and thus summary judgment is appropriate.  Specifically, Bogatschow's complaint

alleges that "at all times relevant to this action, Plaintiff's insurance company had fully compensated Jupiter Anesthesia Associates for the services rendered on January 4, 2016."  Doc. 1 ¶ 38.  And it is now undisputed that "Bogatschow's insurance told him they did not receive a bill from Jupiter Anesthesia Associates and did not pay them."  Doc. 20-1 ¶ 4.  However, Bogatschow's complaint also broadly alleged that he "did not owe a balance to Jupiter Anesthesia Associates," and the defendants were not authorized to collect the debt.  Doc. 1 ¶¶ 37, 47-48.  Disproving Bogatschow's allegation that his insurance company paid the bill does not disprove Bogatschow's broader allegation that he never owed Jupiter Anesthesia Associates a debt.  *See id*. ¶ 37.  The crux of Bogatschow's case is that the defendants attempted to collect a debt from him that he did not owe.  Merely establishing that his insurance company never paid a bill does not prove that the bill was valid.

Indeed, there is evidence the insurance company received and paid a bill from Jupiter Medical Center for "anesthesia" services rendered on January 4, 2016.  Doc. 20-9.  The defendants ignore this evidence.  Perhaps if the defendants had established that the payment of Jupiter Medical Center's bill for "anesthesia" was not a payment for anesthesia services rendered by Jupiter Anesthesia Associates, the result may be different.  But for now, the defendants have not established as a matter of law that Bogatschow "owe[d] a balance to Jupiter Anesthesia Associates."  *See* Doc. 1 ¶ 37.

## B. Whether the February 20 Letter was a Communication Within the Purview of the FDCPA

The FDCPA regulates and restricts debt collection practices to prevent "the use of abusive, deceptive, and unfair debt collection practices."  15 U.S.C. § 1692.  To succeed on a FDCPA claim, a plaintiff must prove that (1) she has been the object of

collection activity arising from a "consumer debt" as defined by the FDCPA; (2) the defendant is a "debt collector" as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  *Reese v. Ellis, Painter, Ratterre & Adams, LLC*, 678 F.3d 1211, 1216 (11th Cir. 2012).  "As a remedial statute, the provisions of the FDCPA are to be construed liberally in favor of the consumer."  *Hart v. Vital Recovery Servs., Inc.*, 2013 WL 12116580, at *5 (N.D. Fla. 2013) (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)) (other citation omitted).

In relevant part, the FDCPA prohibits "[t]he false representation of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  The FDCPA also prohibits collecting or attempting to collect "any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Bogatschow alleges that the February 20 letter from the defendants misrepresented the character and status of the debt and was an effort by the defendants to collect an amount they were not authorized to collect. Doc. 1 ¶¶ 37, 47. As a threshold, the FDCPA only applies to communications that convey information about a debt and are aimed at least in part at inducing a debtor to pay.  *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (2014).

The defendants argue that the February 20 letter does not fall under the purview of the FDCPA because it was not an attempt to collect a debt.  Doc. 18-1 at 12.  The defendants state that the February 20 letter "makes no payment demand, does not contain any instructions on how to make a payment, contains no settlement offers, does not include a payment coupon or payment envelope, makes no suggestion of any

potential consequences of nonpayment, [and] makes no mention of credit reporting." *Id.* at 15.

The February 20 letter, which was sent in response to Bogatschow's dispute and demand for verification of the debt, listed the name of the original creditor, account number, amount owed, contact information for the defendants, and stated in part:

> We received your dispute regarding the validity of the above-referenced account(s).  Enclosed is the verification of debt we objected from the current creditor, CF Medical LLC.  The verification is labeled "statement of account" and sets forth the outstanding balance for services rendered by the medical provider stated above.  The outstanding balance is the obligation of the responsible party for the accounts(s).
> . . .
> This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

Doc. 1-1 at 1.

A communication may have multiple purposes, and a communication that informs a debtor of the creditor's rights and intentions can also be for the purpose of collecting a debt.  *Reese*, 678 F.3d at 1217.  The Eleventh Circuit has not laid out a bright-line rule to determine whether a given communication is made for collecting a debt, but many factors have been identified as useful in the analysis.[4]  Factors that courts have weighed in this analysis include "(1) the nature of the relationship between the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether

---

[4] Both parties urge the Court to apply the "least sophisticated consumer" standard to determine whether the February 20 letter was an attempt to collect a debt.  Docs. 20 at 8; 18-1 at 12 ("The key question is whether the least sophisticated consumer, taking the conversation in its entirety, would believe that the debt collector was attempting to induce payment on a debt.").  However, that standard appears to be used to determine whether a communication *violated* the FDCPA, not the threshold question of whether the statute *applies*.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-94 (11th Cir. 2010); *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014); *but see McGee v. Piper Fin. Servs., LLC* 2020 WL 5548779, at *7 (N.D. Ga. July 7, 2020).  The defendants have not argued that the February 20 letter, assuming that the FDCPA applies, did not violate the statute.

the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay." *McElveen v. Westport Recovery Corp.*, 310 F. Supp. 3d 1374, 1380 (S.D. Fla. 2018) (quoting *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1240-41 (S.D. Fla. 2015)).

In *Pinson v. Albertelli Law Partners LLC*, the Eleventh Circuit highlighted material differences in letters that did and did not constitute communications sent in connection with the collection of a debt.  618 F. App'x 551, 553-54 (11th Cir. 2015).  The first letter, which did not fall under the purview of the FDCPA:

> acknowledged receipt of [the plaintiff's] "Request for Validation" of his loan, informed him that the firm was preparing payoff and reinstatement letters, and asked him to re-send an attachment that had been omitted from his first letter.  There was no reference to the amount owed, no implicit or explicit demand for payment, and not discussion of repercussions if payment was not tendered.  The intent of the letter was to obtain the form [the plaintiff] forgot to attach; it was not an attempt to collect a debt.

*Id.*  Two other letters, which the Eleventh Circuit held were sent in connection with the collection of a debt and therefore fell under the purview of the FDCPA:

> contained an implicit demand for payment, because they stated the amount of the debt, described how the debt could be paid, and informed [the plaintiff] how he could tender payment.  One letter stated that fees and costs would continue to increase if [the plaintiff] failed to reinstate the loan immediately.  Both letters were communications sent in connection with the collection of a debt.

*Id*. at 554.

The defendants have not established as a matter of law that the February 20 letter was an attempt to collect a debt.  First, the letter stated that it was from a debt

collector and was "an attempt to collect a debt[.]"  Doc. 1-1 at 1.  While this language is not dispositive, it certainly suggests the letter was intended to collect a debt.

The February 20 letter also listed the amount owed.  The defendants argue that the letter did not make a payment demand.  Doc. 18-1 at 15.  But the letter stated that the amount due was $2,016.00, Roman Bogatschow was the responsible party, and that "the outstanding balance is the obligation of the responsible party for the account(s)."  Doc. 1-1.  After stating that Bogatschow is responsible for the outstanding balance, the letter repeats itself three sentences later and states, "[t]he balance … is the obligation of the responsible party."  *Id*.  So, while the letter does not explicitly demand payment from Bogatschow, the letter does list the amount owed and states twice that Bogatschow is responsible for it.

True, the letter did not expressly threaten consequences if Bogatschow did not pay the debt, but consequences were implied—the letter was from a lawyer tasked with collecting a debt.  The letter also did not explain the method by which Bogatschow should pay for the debt.  But the letter did list Bluhm's phone number, hours of operation, and address.  Doc. 1-1.  Finally, the defendants argue that the letter was merely a "Verification Response Letter, which Bluhm sent to [Bogatschow] in response to [Bogatschow's] dispute and request for verification of the debt."  Doc. 18-1 at 14.  But a "communication can have more than one purpose, for example, providing information to a debtor as well as collecting a debt."  *McGee v. Piper Fin. Services, LLC*, 2020 WL 5548779, at *6 (N.D. Ga. July 7, 2020) (citing *Caceres*, 755 F.3d at 1302; *Reese*, 678 F.3d at 1217).  This appears to be such a multi-purpose communication.

Thus, because the letter says that it is an attempt to collect a debt, lists the amount owed, names Bogatschow as the party responsible for the amount owed, and was sent from a law office tasked with collecting the debt, the Court cannot rule as a matter of law that the February 20 letter was not a communication sent in connection with the collection of a debt.  Accordingly, the defendants' motion for summary judgment as to Bogatschow's FDCPA is **DENIED**.

### C. Bogatschow's State Law Claims

The defendants have also moved for summary judgment on Bogatschow's claims pursuant to the Georgia Fair Business Practices Act ("GFBPA") and the Unfair and Deceptive Practices Toward the Elderly Act ("UDPTEA").  Doc. 18-1 at 17.  Both parties agree that the survival of Bogatschow's state law claims hinges on his FDCPA claim. *Id*.; Doc. 20 at 7.[5]  Because the Court denied the defendants' motion for summary judgment on Bogatschow's FDCPA claim, their motion for summary judgment as to his state law claims is also **DENIED**.

### IV. CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (Doc. 18) is **DENIED**.

**SO ORDERED**, this 18th day of November, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Specifically, the defendants state that a violation of the FDCPA may be a violation of the GFBPA, but because Bogatschow's FDCPA claims fail, his GFBPA claims should also be dismissed.  The defendants also state that Bogatschow's UDPTEA claim is derivative of his GFBPA claim and that it too fails if his FDCPA claim fails.  Doc. 18-1 at 17.